**Ollie L. EVANS, Appellant,**

v.

**Betty J. ALLEN, Appellee.**

**No. 01–10–00766–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 27, 2011.

Reconsideration En Banc Overruled
Feb. 2, 2012.

Christine Sampson Willie, Law Offices of Christine S. Willie, Joseph Rutherford Willie II, Willie & Associates, P.C., Houston, TX, for Appellant.

David A. Chaumette, Rodney D. Glover, De La Rosa & Chaumette, Jeffrey Earl Crews, Crews Wenberg PLLC, Tyesha Yvette Elam, Elam Law Firm, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant Ollie L. Evans filed a will contest seeking to set aside the order admitting the December 22, 2006 will of decedent William Vincent Vinson to probate. The trial court directed a verdict in favor of Betty J. Allen, the independent executor of Vinson's estate, on the ground that the statute of limitations barred Evans's will contest. In two issues, Evans contends that (1) the trial court erred in granting the directed verdict on the basis of limitations, and (2) Allen was judicially estopped from seeking to probate the December 22, 2006 will because Allen had previously been appointed Vinson's permanent guard-

ian and the probate court did not restore his capacity before his death.

We affirm.

## Background

William Vinson executed a self-proving will on March 1, 2006 (the "First Will").[1] In this will, Vinson devised his estate in equal shares to his niece, Ollie Evans, and his great-niece, Aisha Evans. Vinson named Aisha as independent executor and named Ollie as contingent independent executor.

Due to Vinson's continuing severe health problems, Aisha, Ollie, and Allen, who is Ollie's sister, initiated guardianship proceedings. On September 27, 2006, the Probate Court Number 4 of Harris County issued an order appointing Allen as the permanent guardian of Vinson's person and estate. The order stated that the court found, by clear and convincing evidence, that Vinson was "an incapacitated person." The order also recited that the court found, by a preponderance of the evidence, that Vinson "lacks the capacity to do some, but not all, of the tasks necessary to care for himself or to manage his property." Although the order again stated that Vinson "lacks the capacity to do some, but not all tasks as more specifically set out below," it did not specify which tasks Vinson lacked the capacity to undertake.

On December 22, 2006, while he was still under guardianship, Vinson executed a second self-proving will (the "Second Will"), which revoked the First Will. The Second Will contained specific gifts to Tijuana Campbell, Vinson's great-granddaughter, Allen, and Shatara Allen, Allen's daughter. Vinson devised the remainder of his estate to Allen and Shatara in equal shares. This will also included the following clause:

> It is my clear intention that *no* property whatsoever, of any type or kind, is to be given to Ollie L. Evans or Aisha Z. Evans of Houston, Texas. Ollie L. Evans and Aisha Z. Evans are expressly prohibited from inheriting by any means from my estate, real or personal, of whatsoever kind, seized and possessed, and wheresoever situated.

This will named Allen as the independent executor of Vinson's estate.

Vinson died on January 18, 2007, and Allen filed an application to probate the Second Will and to issue letters testamentary. On February 28, 2007, the Probate Court Number 1 of Harris County signed an order admitting the Second Will to probate and authorizing the issuance of letters testamentary to Allen. Allen subsequently qualified as independent executor.

On July 2, 2009, more than two years after the trial court admitted the Second Will to probate, Evans filed an application to probate the First Will and a will contest seeking to set aside the order admitting the Second Will to probate. Evans alleged that the Second Will should be set aside "because it was fraudulently obtained and/or forged" and because Vinson lacked testamentary capacity to execute a will on December 22, 2006, due to the ongoing guardianship. Evans further alleged that she timely filed the contest because the statute of limitations did not begin running until December 15, 2007, the date she alleged that Allen served her with an original petition to recover estate assets. She contended that this date was the first time she learned (1) that the Second Will exist-

1. This will states that it is the "Last Will and Testament of William M. Vinson." The December 22, 2006 will states that it is the "Last Will and Testament of William V. Vinson." The parties do not dispute that these two wills refer to the same testator.

ed, (2) that it had been admitted to probate, and (3) that Allen had been named independent executor of Vinson's estate.

In response to Evans's will contest, Allen asserted the affirmative defense of limitations and argued that the contest was untimely because it was not filed within the two-year statute of limitations pursuant to Probate Code section 93, which generally requires will contests to be brought within two years of the date the will is admitted to probate. Allen additionally argued that Evans alleged no factual basis to support the application of the fraud or forgery exceptions to the general statute of limitations.

On July 14, 2010, the trial court held a brief pretrial conference with the parties. When discussing why the trial court denied Evans's previously filed motion for summary judgment, the court stated that it could not reach the issue of Vinson's testamentary capacity to execute the Second Will because the statute of limitations had expired and the only exceptions were for forgery or fraud and "there is no discovery rule for testamentary capacity." The court also expressed its opinion that Evans could not utilize the discovery rule because she had constructive notice that the Second Will had been admitted to probate, and, thus, the statute of limitations began running on that date.

The trial court held a bench trial on July 19, 2010. The court granted a directed verdict in favor of Allen, concluding that the discovery rule does not apply to questions of testamentary capacity and, therefore, the statute of limitations bars her will contest. The court allowed Evans's counsel to make a bill of exceptions, during which he called Evans, Allen, and Allen's attorney to testify. Evans testified that she did not know that the Second Will existed until Allen served her with a petition claiming that Evans owed money to Vin-

son's estate. Allen testified that she was Vinson's guardian, that she had participated in the guardianship proceedings, that she never asked the probate court to restore Vinson's capacity before he died, and that Vinson's capacity had not been restored by the court at the time he executed the Second Will. Allen's attorney also testified that no court proceedings restoring Vinson's capacity ever occurred.

The trial court subsequently signed a final judgment denying Evans's will contest and ordering that Evans take nothing. At Evans's request, the trial court then issued the following findings of fact:

1. The Deceased, William Vinson ("Decedent"), executed a Last Will and Testament on December 22, 2006 [that] appointed Betty Allen as his Independent Executrix.

2. Mr. Vinson passed away on January 18, 2007, and an Application to Probate his Will was filed on January 30, 2007.

3. On February 28, 2007 this Probate Court entered an Order Probating Will [and] Authorizing Letters Testamentary, and issued Letters Testamentary to Betty J. Allen as the independent executrix of Mr. Vinson's estate. There was no contest to the will on file at that time.

4. On or about April 13, 2007 Ollie L. Evans ("Contestant") received direct notification of Betty Allen's appointment as executrix and the probating of the December 2006 Will along with a demand for release of assets and property belonging to the Estate of William Vinson.

5. Ollie L. Evans filed her Contest on July 1, 2009, more than two (2) years past the due date to contest a probated Will for lack of testamentary capacity.

6. There was no evidence presented at trial that Betty J. Allen committed any type of fraud or forgery upon her uncle, the Decedent, William Vinson, when he requested a new Will or when he executed his specific wishes in his Last Will and Testament on December 22, 2006.

The court also issued the following conclusions of law:

1. Contestant's Application is untimely and is dismissed for failure to bring her contest within the two (2) year time period as specified in the Probate Code.

2. The Contestant does not outline any facts or allegations in her pleadings to support the assertion of fraud or forgery that are the only exceptions to the two (2) year rule.

3. Ollie L. Evans was charged with constructive notice of Mr. Vinson's probated Will of February 28, 2007 as a party interested in the estate with knowledge of Mr. Vinson's death.

4. The Application to Probate Will and Contest filed by Ollie Evans on July 1, 2009 is barred by limitations as it is a will contest based solely on the Decedent's lack of testamentary capacity on December 22, 2006.

(Citations omitted.) This appeal followed.

### Standard of Review

■ When reviewing the grant of a directed verdict, we follow the usual standard for assessing the legal sufficiency of the evidence. *See Hunter v. PriceKubecka, PLLC,* 339 S.W.3d 795, 802 (Tex.App.-Dallas 2011, no pet.) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 821–28 (Tex. 2005)). We examine the evidence in the light most favorable to the party against whom the verdict was directed, and we determine whether there is any evidence of probative value to raise a material fact issue on the question presented. *See Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex.2004). We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Hunter,* 339 S.W.3d at 802 (citing *City of Keller,* 168 S.W.3d at 827). A directed verdict in favor of the defendant is proper when "a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" or when the "plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000); *see also B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 21 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) ("A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment.") (quoting *Byrd v. Delasancha,* 195 S.W.3d 834, 836 (Tex.App.-Dallas 2006, no pet.)).

■ We may affirm a directed verdict "even if the trial court's rationale for granting the directed verdict is erroneous, provided the directed verdict can be supported on another basis." *Hunter,* 339 S.W.3d at 802 (citing *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 443 (Tex. App.-Dallas 2002, pet. denied)); *see also Cox v. S. Garrett, L.L.C.,* 245 S.W.3d 574, 578 (Tex.App.-Houston [1st Dist.] 2007, no pet.) ("We can consider any reason why the directed verdict should have been granted, even if not stated in the party's motion.").

### Statute of Limitations

In her first issue, Evans contends that the trial court erred in directing a verdict in favor of Allen on the basis of limitations because (1) Evans lacked constructive no-

tice of the probate proceedings involving the Second Will because she had no interest in the Second Will and (2) the issue of testamentary capacity is subject to the discovery rule.

■ Probate Code section 93 provides: After a will has been admitted to probate, any interested person may institute suit in the proper court to contest the validity thereof, within two years after such will shall have been admitted to probate, and not afterward, except that any interested person may institute suit in the proper court to cancel a will for forgery or other fraud within two years after the discovery of such forgery or fraud, and not afterward.

TEX. PROB.CODE ANN. § 93 (Vernon 2003); *see also Stovall v. Mohler*, 100 S.W.3d 424, 427 (Tex.App.-San Antonio 2002, pet. denied) ("[Section 93] applies to those cases where an earlier will is sought to be probated over later wills."). The Probate Code further defines "interested person" as "heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered." *Id.* § 3(r) (Vernon Supp.2010).

■ A "person interested in the estate" is "one who has a legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired, benefitted, or in some manner materially affected by the probate of the will." *Abbott v. Foy*, 662 S.W.2d 629, 631 (Tex. App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.) (holding, in contest of will already admitted to probate, that appellant, as beneficiary under prior will, was person interested in estate because if probated will was void for undue influence or lack of testamentary capacity and prior will was last valid will, appellant, "as [a] beneficiary, has a pecuniary interest in the estate"). In a contest of a will already admitted to probate in which the contestant claims that

an earlier will is the last valid will, a beneficiary under the prior will qualifies as a person interested in the estate and thus has standing to maintain the will contest. *See In re Estate of Redus*, 321 S.W.3d 160, 162–63 (Tex.App.-Eastland 2010, no pet.) ("If the 2005 will is Redus's last valid will, [the contestant of the later will and the beneficiary under the prior will] has a pecuniary interest in the estate."). "To show an interest in an estate by reason of a prior will, .... it is necessary that the contestant show that he was named as a beneficiary in a testamentary instrument executed with the formalities required by law, that is, a will." *Hamilton v. Gregory*, 482 S.W.2d 287, 289 (Tex.Civ.App.-Houston [1st Dist.] 1972, orig. proceeding).

Evans contends that she was interested in the First Will because she was a beneficiary under that will, but that she was not interested in the Second Will, in which she was not named as a beneficiary, because she was not necessarily one of Vinson's heirs at law. The inquiry here is not whether the contestant has an interest in a particular will; rather, the inquiry is whether the contestant has an interest in the decedent's *estate*. It is undisputed that the First Will named Evans as a beneficiary and the Second Will did not. Thus, in this attack upon the Second Will, if the trial court had reached the issue of testamentary capacity and found that Vinson lacked testamentary capacity at the time he executed the Second Will and that the First Will was Vinson's last valid will, then Evans, as a beneficiary under the First Will, would have a pecuniary interest in Vinson's estate. *See Estate of Redus*, 321 S.W.3d at 163; *Abbott*, 662 S.W.2d at 631.

We therefore conclude that Evans qualifies as a person interested in Vinson's

estate.[2]

Evans further contends, in her first issue, that the discovery rule applies to the issue of testamentary capacity and thus operates to delay the beginning of the limitations period until she actually learned of the existence of the Second Will. Allen contends that, as a person interested in Vinson's estate, Evans was charged with constructive notice of the Second Will and its contents and, therefore, the statute of limitations began running on the date the Second Will was admitted to probate. We agree with Allen.

 Generally, Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings, even in cases involving allegations of fraud.[3] *See Little v. Smith,* 943 S.W.2d 414, 420 (Tex.1997). "A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records." *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981). Constructive notice creates an irrebuttable presumption of actual notice. *Id.* "Persons interested in an estate admitted to probate are charged with notice of the contents of the probate records." *Id.; Little,* 943 S.W.2d at 420 ("Such claims [arising out of probate proceedings] are barred by limitations because the claimant has constructive notice of the probate proceedings."); *In re Estate of McGarr,* 10 S.W.3d 373, 377 (Tex.App.-Corpus Christi 1999, pet. denied) ("Even in probate cases involving allegations of fraud, Texas courts have refused to apply the discovery rule because of the doctrine of constructive notice and the strong public interest in according finality to probate proceedings."). Thus, at the time a will is admitted to probate, a potential contestant has constructive knowledge of the date the testator executed the will, the fact that the contestant was not mentioned in the will, and the fact that a previously unknown will exists. *See Mooney,* 622 S.W.2d at 85. In this case, the statute of limitations begins to run on the date the will was admitted to probate. *Id.*

**2.** We further note that both Probate Code section 93, which governs will contests initiated after a will is admitted to probate, and Probate Code section 10, which governs will contests initiated before a will is admitted to probate, require a contestant to be "interested" to have standing to maintain the contest. *See* Tex. Prob.Code Ann. §§ 10, 93 (Vernon 2003); *see also In re Estate of Redus,* 321 S.W.3d 160, 162 (Tex.App.-Eastland 2010, no pet.) ("A person must have an interest in an estate to have standing to file a will contest."). Here, Evans argues that she is interested in the estate such that she has standing to contest the Second Will, but that she is *not* interested in the estate such that she can be charged with constructive notice of the Second Will upon its admission to probate for limitations purposes.

**3.** We note that the plain language of section 93 provides an exception to the general two-year statute of limitations only in cases of "forgery or other fraud." TEX. PROB.CODE ANN § 93. The statute does not refer to testamentary capacity. When interpreting a statute, we begin with the plain language of the statute because "it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999). Evans does not argue and cites no authority for the proposition that lack of testamentary capacity constitutes "other fraud" such that this issue falls within the limitations exception. *See Neill v. Yett,* 746 S.W.2d 32, 35 (Tex.App.-Austin 1988, writ denied) ("The type of fraud that invalidates a probate judgment upon attack pursuant to § 93 is extrinsic fraud, not intrinsic fraud. Fraud is considered 'intrinsic' when the fraudulent acts pertain to an issue that was, or could have been, litigated in the original suit. On the other hand, fraud is extrinsic when the fraudulent acts prevent a party from either having a trial or prevent him from having a fair opportunity to present his case.").

We have already determined that Evans, as a beneficiary under the First Will, qualified as a "person interested in" Vinson's estate. Thus, as a person interested in the estate, she is charged with constructive notice of the contents of the public probate records. *See id.* Examination of the probate records in this case would have disclosed that Vinson executed the Second Will on December 22, 2006, nearly three months after he had been placed under guardianship, and that this will revoked the First Will and omitted Evans as a beneficiary. Therefore, the statute of limitations began to run on February 28, 2007, the date the probate court admitted the Second Will to probate. *See id.; see also Neill v. Yett,* 746 S.W.2d 32, 36 (Tex. App.-Austin 1988, writ denied) ("Examination of the probate records in this cause would have disclosed that the will of W.T. Yett made no bequest or devise to Irmalee. Irmalee was charged with notice that she received nothing by her grandfather's will and she should have begun her investigation of the facts surrounding the execution of the will upon receiving such notice. The statute of limitations began to run when W.T. Yett's will was admitted to probate."). It is undisputed that Evans did not file her will contest until July 2,

2009, more than two years after the trial court admitted the Second Will to probate.

We therefore conclude that because Evans, a person interested in Vinson's estate, was charged with constructive notice of the Second Will, the statute of limitations began to run on the date the court admitted the Second Will to probate. We hold that the trial court correctly granted a directed verdict in favor of Allen on the basis of limitations.[4]

We overrule Evans's first issue.

### Judicial Estoppel

In her second issue, Evans contends that Allen is judicially estopped from seeking to probate the Second Will because Allen had previously admitted, in Vinson's guardianship proceedings, that he was totally incapacitated and thus lacked testamentary capacity to execute the Second Will. Allen contends that the application of judicial estoppel is inappropriate because the standards for incapacity and the standards for testamentary capacity are different, and, thus, she did not assert inconsistent positions in the two proceedings. We agree with Allen.

Judicial estoppel "precludes a party from adopting a position inconsistent with one that it maintained successfully in

4. Evans contends that the trial court impermissibly established Allen's statute of limitations affirmative defense "by judicial fiat." Allen raised this defense in her original answer to Evans's will contest and argued that Evans could not establish that the "forgery or other fraud" exceptions applied to this case. A court may take judicial notice of the papers on file in a case, and thus the court may judicially notice that the Second Will was admitted to probate on February 28, 2007, and that Evans did not file her will contest until July 2, 2009, more than two years later. *See Klein v. Dimock,* 705 S.W.2d 408, 410–11 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.) ("This is sufficient evidence on which the judge can determine that the application was

filed beyond the limit of the two year statute of limitations."). Furthermore, it was undisputed that Evans was a beneficiary under the First Will, but not the Second Will, and thus the trial court could permissibly determine, as a matter of law, that Evans, as an interested person, was charged with constructive notice of the Second Will and that the statute of limitations began running on the date the Second Will was admitted to probate. *See Cox v. S. Garrett, L.L.C.,* 245 S.W.3d 574, 578 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (stating, in review of grant of directed verdict, that we may consider any reason why directed verdict should have been granted, even if not raised in motion for directed verdict).

an earlier proceeding." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex.2008). This doctrine requires that: (1) a sworn, inconsistent statement be made in a prior judicial proceeding; (2) the party making the statement gained some advantage by it; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528–29 (Tex. App.-Houston [1st Dist.] 2005, no pet.); *see also Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 218 (Tex. App.-El Paso 2010, pet. denied) (holding same).

Before appointing a guardian, the court must find by clear and convincing evidence that the proposed ward is an incapacitated person. TEX. PROB.CODE ANN. § 684(a)(1) (Vernon 2003). An "incapacitated person" is defined as "an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs." *Id.* § 601(14)(B) (Vernon Supp.2010). The court must also find, by a preponderance of the evidence, that "the proposed ward is totally without capacity as provided by this code to care for himself or herself and to manage the individual's property, or the proposed ward lacks the capacity to do some, but not all, of the tasks necessary to care for himself or herself or to manage the individual's property." *Id.* § 684(b)(4).

■■■ A testator has testamentary capacity if he has "sufficient mental ability, at the time the will is executed, to understand the business in which the [testator] is engaged (the making of the will); the effect of [his] act in making the will; and the general nature and extent of [his]

property." *In re Estate of Robinson*, 140 S.W.3d 782, 793 (Tex.App.-Corpus Christi 2004, pet. denied); *In re Neville*, 67 S.W.3d 522, 524 (Tex.App.-Texarkana 2002, no pet.). The testator must also "know [his] next of kin and the natural objects of [his] bounty, and have had sufficient memory to collect in [his] mind the elements of the business to be transacted, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment about them." *Estate of Robinson*, 140 S.W.3d at 793.

■■■ The proper focus is whether the testator had testamentary capacity on the day that the will was executed. *Id.* (citing *In re Estate of Graham*, 69 S.W.3d 598, 606 (Tex.App.-Corpus Christi 2001, no pet.)). We may look to the testator's state of mind at other times "if these times tend to show [his] state of mind on the day the will was executed." *Id.* (citing *Bracewell v. Bracewell*, 20 S.W.3d 14, 22 (Tex.App.-Houston [14th Dist.] 2000, no pet.)); *see also In re Estate of Trawick*, 170 S.W.3d 871, 877 (Tex.App.-Texarkana 2005, no pet.) ("When there is an absence of any direct testimony of acts, demeanor, or condition indicating that the testator lacked testamentary capacity on the date the will was executed, the testator's mental condition on that date may be determined from lay opinion testimony based on the witnesses' observations of the testator's conduct either prior or subsequent to the execution."). We consider this evidence "if it demonstrates that a condition affecting the individual's testamentary capacity was persistent and likely present at the time the will was executed." *Bracewell*, 20 S.W.3d at 22 (quoting *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex.App.-Fort Worth 1998, no pet.)).

Texas courts have held that a testator under a guardianship is "not necessarily

incompetent to make a will although such adjudication [of incapacity] is not set aside [at the time the will was executed]." [5] *Clement v. Rainey*, 50 S.W.2d 359, 359 (Tex.Civ.App.-Texarkana 1932, writ ref'd); *see also Duke v. Falk*, 463 S.W.2d 245, 252 (Tex.Civ.App.-Austin 1971, no writ) ("Even if the guardianship proceedings had demonstrated that [the testator] had been declared a person of unsound mind, being prior to and not too remote from the date of making the will, nevertheless such evidence would have no probative force except as it might tend to show his state of mind at the time of execution of the will."). In *Clement*, the Texarkana Court of Civil Appeals held that:

> One's mental powers may be so far impaired as to incapacitate him from the active conduct of his estate, and to justify the appointment of a guardian for that purpose, and yet he may have such capacity as will enable him to direct a just and fair disposition of his property by will. The most that can be contended for on account of the [guardianship] adjudications is that they prima facie establish that the testator was not competent to make the will.

50 S.W.2d at 359; *cf. Stephen v. Coleman*, 533 S.W.2d 444, 447 (Tex.Civ.App.-Fort Worth 1976, writ ref'd n.r.e.) ("Therefore, there was no adjudication that the testator was incompetent on the date that the will was signed. It follows then that there was no presumption that the testator did not have testamentary capacity on the date he signed the will.").

Thus, although the fact that a testator was under a guardianship at the time that he executed a will creates a presumption that he lacked testamentary capacity, that presumption is not conclusive and may be rebutted with evidence that the testator had testamentary capacity on the day that he executed the will. *See Clement*, 50 S.W.2d at 359; *Stephen*, 533 S.W.2d at 447 (noting that if testator had been adjudicated incompetent before will was executed, there is *presumption* of no testamentary capacity); *see also Bolton v. Stewart*, 191 S.W.2d 798, 802 (Tex.Civ. App.-Fort Worth 1945, no writ) ("We also believe that the prima facie evidence of insanity at all times subsequent to the adjudication is subject to rebuttal by competent proof. . . ."). A guardianship determination is relevant to the question of testamentary capacity, but it does not follow that a testator automatically lacks testamentary capacity after a court places the testator under a guardianship.

Here, the earlier probate court found on September 27, 2006, that Vinson was an incapacitated person and required a guardian of the person and of the estate. In making this determination, the court ruled that Vinson "lacks the capacity to do some, but not all, of the tasks necessary to care for himself or to manage his property." The order creating the guardianship and appointing Allen as Vinson's guardian does not specify which tasks Vinson lacked the capacity to perform. In making this determination, the court did not find that Vinson was "totally incapacitated." [6]

---

**5.** This appears to be the rule followed by most jurisdictions. *See* A.G. Barnett, Annotation, *Effect of guardianship of adult on testamentary capacity*, 89 A.L.R.2d 1120 § 2 (1963) ("All of the cases found . . . follow the general rule that one otherwise of testamentary capacity may make a valid will, regardless of the fact that he is under guardianship, that is, that the mere existence of a guardianship at the time

the will was executed does not require the conclusion that the will is invalid.").

**6.** Although Evans argues that Allen judicially admitted that Vinson was "totally incapacitated," the record contains only Vinson's doctor's recommendation regarding a guardianship and the guardianship order itself. The record does not contain Allen's pleadings

We therefore conclude that because a testator under a guardianship does not necessarily lack testamentary capacity to execute a will, Allen, by seeking a guardianship for Vinson and by seeking to probate a will executed after the initiation of the guardianship, did not assert inconsistent positions. We therefore hold that Allen is not judicially estopped from seeking to probate the Second Will.

We overrule Evans's second issue.

## Conclusion

We affirm the judgment of the trial court.

from the guardianship proceeding. During Evans's bill of exceptions, Allen testified only that the probate court had declared Vinson incapacitated and that the court did not restore his capacity prior to his death.