**IN THE**
**TENTH COURT OF APPEALS**



_____

**No. 10-12-00339-CV**

**IN RE JOHN C. PASCHALL**

_____

**Original Proceeding**

_____

# MEMORANDUM OPINION

_____

In this mandamus proceeding, we are asked to determine whether the respondent, Judge H.D. Black assigned to the 82nd Judicial District Court, abused his discretion in compelling the production of the Marium Oscar 1992 Trust documents to real parties in interest, Marsha and John Gilbert, both of whom allegedly lack standing. For the reasons stated herein, we deny relator's petition for writ of mandamus.[1]

## I.    BACKGROUND

Marium Jeanette Oscar died testate on November 20, 2004, at the age of ninety-five.  On December 3, 2004, Marium's Last Will and Testament was admitted to probate

_____

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so.").

in the County Court of Robertson County, Texas, in cause number 6875. The will specifically names relator, John C. Paschall, as executor of Marium's estate. Furthermore, the will also provides that:

> I [Marium] give, devise, and bequeath all of my property of whatsoever nature, kind, or character, whether real, personal, or mixed, of which I may die seized or possessed or to which I may then or at any time thereafter be entitled, all my estate ("my residuary estate") to the trustee of the Marium Oscar 1992 Trust.

On June 7, 2011, almost seven years after Marium's will was probated, Harry H. Oscar Jr. filed suit against Paschall and Marium's estate, seeking an accounting from Paschall and asserting claims of unjust enrichment and breach of fiduciary duty.[2] Subsequently, on September 6, 2011, Harry amended his original petition to include Marsha and John Gilbert, real parties in interest, as parties to his lawsuit. In their live pleading, the third amended petition, Marsha and John assert the same causes of action as alleged by Harry and "demand equitable relief, including the imposition of a constructive trust and/or resulting trust over any property that purportedly belonged to the Marium Oscar 1992 trust."

In any event, on September 15, 2011, the trial court granted a summary judgment in favor of Paschall with respect to Harry. Specifically, the trial court noted, in its summary-judgment order, that: "Plaintiff [Harry] presented no evidence to establish his standing to bring suit against John C. Paschall." The record does not contain an

---

[2] Harry H. Oscar Jr. is not a party to this proceeding.

order severing Harry's claims from those brought by Marsha and John.[3]  Furthermore, it does not appear as if Harry appealed the trial court's summary-judgment order.

Thereafter, Marsha and John, claiming to be heirs of Marium, requested that Paschall produce the Marium Oscar 1992 Trust and other records.[4]  Paschall objected to producing the Marium Oscar 1992 Trust and other records because neither Marsha nor John have standing to bring a cause of action in this matter; thus, Paschall argued that the trial court had no jurisdiction to compel the production of any records.  Paschall also filed a motion to dismiss Marsha and John's claims for want of jurisdiction, which has not yet been ruled on.

In response to Paschall's objections and refusal to produce the trust documents, Marsha and John filed a motion to compel, a motion to unseal the trust documents, and

---

[3] In an affidavit attached to Marsha and John's response to Paschall's mandamus petition, Marsha and John's counsel, Ty Clevenger, averred that Harry's claims were severed from Marsha and John's.

[4] Also attached to their brief as an appendix is an affidavit executed by Marsha, wherein she states that:

1.  I am one of the plaintiffs in the case listed above.  John Gilbert is my brother, and he is also a plaintiff.

2.  Harold S. Gilbert was our father.

3.  Reba Samuels Gilbert was the mother of Harold S. Gilbert, and she was my grandmother.  Her mother, Maymie Oscar Samuels, died when I was one year old, but my grandmother told me that Maymie Oscar Samuels grew up in Calvert, Texas.

4.  According to our family genealogical records and oral history, as well as synagogue records, photographs, and cemetery records, Isador Oscar, Sr. was the father of Maymie Oscar Samuels, Isador Oscar, Jr.[,] and Harry Oscar.  Because Marium Oscar was the daughter of Isador Oscar, Jr., she would be my (and John Gilbert's) first cousin, twice removed.

This affidavit bears no file stamp; thus, it is unclear whether this document was filed in the trial court.  Furthermore, the record does not contain any of the genealogical records, synagogue records, photographs, or cemetery records alluded to in Marsha's affidavit.

a request for setting. The trial court set the discovery matter for a hearing on August 14, 2012.

After the August 14, 2012 hearing, the trial court ordered that Paschall produce the trust documents to Marsha and John. In particular, the trial court noted the following in its order:

> The Plaintiffs' motion to unseal evidence and their motion to compel discovery responses were heard by the Court on August 14, 2012. The hearing on the motion to unseal evidence is continued until the oral argument scheduled for December 11, 2012[,] at 10 a.m. Counsel are asked to address TEX. R. CIV. P. 76a[,] as well as *Abdelnour v. Mid National Holdings, Inc.*, 190 S.W.3d 237 (Tex. App.—Houston [1st Dist.] 2006); and, apply the facts of the case at bar.

> The motion to compel discovery responses is GRANTED as follows. The Court finds that the Marium Oscar 1992 Trust instrument is subject to discovery for the purpose of determining if the trust has failed per *Pickelner v. Adler*, 229 S.W.3d 516 (Tex. App.—Houston [1st Dist.] 2007). Before the trust instrument is tendered to the Plaintiffs, the Defendant shall be granted 31 days to perfect a writ seeking mandamus relief from this Order to the Court of Appeals of Texas for the Tenth District in Waco, Texas. The Plaintiffs and Plaintiffs' Counsel are ordered to not disclose the contents of the trust agreement.

Paschall subsequently filed his petition for writ of mandamus in this Court.

## II.    STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is "no adequate remedy by appeal." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (citations omitted). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* (citations

omitted).  And, generally speaking, an adequate legal remedy exists if the relator is able to raise the issue on appeal.  *See id.*  However, in some extraordinary cases, an appellate remedy may be inadequate when the benefits to mandamus review outweigh the detriments.  *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462, 468-69 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.  Moreover, a relator has the burden of providing this court with a sufficient record to establish his right to mandamus relief.  *See Walker*, 827 S.W.2d at 837; *see also* TEX. R. APP. P. 52.3, 52.7.

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal.  *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding).  When determining whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed.  *Id.*  The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence.  *See* TEX. R. CIV. P. 192.3(a).  However, this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information.  *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

### III.   ANALYSIS

In his mandamus petition, Paschall asserts that the Gilberts do not have standing to bring suit in this matter because they are not persons interested in the estate or, in

other words, heirs, devisees, spouses, creditors, or other persons having a property right in Marium's estate. *See* TEX. PROB. CODE ANN. § 3(r) (West Supp. 2012). Specifically, Paschall alleges that "the Gilberts have no pecuniary interest in the estate of Marium Jeanette Oscar, but seek only to meddle into the affairs of the estate for the purpose of getting a copy of the Marium Oscar 1992 Trust." Paschall also argues that "[t]his is nothing more than a fishing expedition where the Gilberts, as mere strangers or curiosity seekers, are attempting to use the court system to obtain information not intended for public disclosure . . . ." All of Paschall's arguments are couched within the standing doctrine.

## A.    Adequate Remedy By Appeal

We first note the unusual nature of this mandamus proceeding. Essentially, Paschall seeks to avoid producing the trust documents on the basis that the Gilberts do not have standing, which, if true, would result not only in Paschall not having to produce the trust documents but likely the dismissal of the Gilberts' lawsuit in its entirety. Ordinarily, appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). However, with regard to the adequate-remedy-at-law prong of our mandamus review, Paschall argues that he "has no other remedy other than mandamus. Otherwise, Relator will continue to have to defend himself and expend large sums of money on defense against the frivolous and meritless

claims of individuals who have no standing to complain."[5] In other words, Paschall asserts that the benefits to mandamus review outweigh the detriments. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 462, 468-69; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. Furthermore, the Gilberts do not dispute Paschall's assertion that he does not have an adequate remedy by appeal. Because it is undisputed as to whether Paschall has an adequate remedy at law, we will continue our analysis, focusing on whether the trial court clearly abused its discretion in ordering the trust documents to be produced to the Gilberts.[6]

### B.    Standing

"Standing is a constitutional prerequisite to maintaining suit in either federal or state court." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). Standing "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Essentially, parties have standing when they are personally aggrieved, regardless of whether they are acting with legal authority. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (holding that the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be

---

[5] In support of his contention, Paschall references several other lawsuits brought by the Gilberts' counsel against him—this suit, the Harry Oscar lawsuit, and two different lawsuits in the United States District Court for the Western District of Texas.

[6] We recognize, however, that it is possible for the trial court to address Paschall's standing argument with regard to his motion to dismiss. But, to our knowledge, that motion has not been ruled on. Moreover, it is also arguable that the trial court implicitly concluded that the Gilberts have standing in this matter when it ordered the trust documents to be produced. Regardless, out of an abundance of caution, we will presume that Paschall lacks an adequate remedy by appeal.

actually determined by the judicial declaration sought"). The complained-of injury "must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008) (footnotes omitted); *see Tex. Lottery Comm'n v. Scientific Games Int'l, Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied) (holding that "[t]o establish standing, one must show a justiciable interest by alleging an actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally"); *see also Elizondo v. Tex. Natural Res. Conservation Comm'n*, 974 S.W.2d 928, 932 (Tex. App.—Austin 1998, no pet.) (citing *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 2204-05, 45 L. Ed. 2d 343 (1975) (noting that the general standard for determining whether a plaintiff has standing is whether she has such a personal stake in the outcome of the controversy as to warrant invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on her behalf)).

Standing is implicit in subject-matter jurisdiction and cannot be waived. *See Lovato*, 171 S.W.3d at 849; *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 443. As such, challenges to standing can be raised at any time, including for the first time on appeal. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000). Furthermore, whether a court has subject-matter jurisdiction is a legal question that we review de novo. *See Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App.—Dallas 2009, no pet.).

## C.    Discovery Disputes

At its core, this mandamus proceeding involves a discovery dispute—namely, whether the trust documents should be produced to the Gilberts.  We note that Texas courts have routinely held that the trial court has broad discretion over the discovery process.  *See In re Colonial Pipeline Co.*, 968 S.W.2d at  941 (noting that the trial court has broad discretion to schedule and define the scope of discovery in cases); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *see also In re Williams*, 328 S.W.3d 103, 111 (Tex. App.—Corpus Christi 2010, orig. proceeding).  Nevertheless, a trial court's ruling that requires production of information beyond what our procedural rules permit is an abuse of discretion.  *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per curiam) (citing *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam)); *see Hall*, 909 S.W.2d at 492.  If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist.  *In re Dana Corp.*, 138 S.W.3d at 301 (citing *Texaco, Inc.*, 898 S.W.2d at 815; Walker, 827 S.W.2d at 839).  Thus, "[m]andamus review is proper for discovery that is 'well outside the proper bounds.'"  *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 711 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding) (citing *In re Am. Optical Corp.*, 988 S.W.2d at 713).

Discovery is generally permitted of any unprivileged information relevant to the subject of a lawsuit, whether it relates to a claim or defense of the parties.  *See* TEX. R. CIV. P. 192.3(a); *In re Am. Optical Corp.*, 988 S.W.2d at 713 (providing that, although the scope of discovery is broad, requests must show a reasonable expectation of obtaining

information that will aid the dispute's resolution and may not be used as a fishing expedition); *see also In re Spence*, No. 2-09-392-CV, 2010 Tex. App. LEXIS 4884, at *6 (Tex. App.—Fort Worth June 21, 2010, orig. proceeding) ("The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence.")   Information is relevant if it tends to make the existence of fact that is of consequence to the determination of the action more or less probable than it would be without the information.  TEX. R. EVID. 401; *see In re Brewer Leasing, Inc.*, 255 S.W.3d at 712.

## D.     Will Contests and Interested Persons

In their live pleading, the Gilberts allege that Paschall has misappropriated hundreds of thousands of dollars belonging to Marium's estate for his personal use. They also allege that the trust is void because Marium's will is invalid.  And, because Marium's will is invalid, under the laws of intestacy, the Gilberts assert that they inherit from Marium's estate and, thus, have a pecuniary interest in both the will and the trust. Based on our reading of the live pleadings, the Gilberts ostensibly seek to attack the trust by contesting the underlying will.

A will contest is a direct attack on the order admitting a will to probate and must be filed in the original probate proceeding.  *Crawford v. Williams*, 797 S.W.2d 184, 186 (Tex. App.—Corpus Christi 1990, writ denied).  Furthermore, section 93 of the Texas Probate Code provides:

After a will has been admitted to probate, any interested person may institute suit in the proper court to contest the validity thereof, within two years after such will shall have been admitted to probate, and not afterward, except that any interested person may institute suit in the proper court to cancel a will for forgery or other fraud within two years after the discovery of such forgery or fraud, and not afterward. Provided, however, that incapacitated persons shall have two years after the removal of their disabilities within which to institute such contest.

TEX. PROB. CODE ANN. § 93 (West 2003).

The Texas Probate Code defines an "interested person" as "heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered." TEX. PROB. CODE ANN. § 3(r). In *Evans v. Allen*, the First Court of Appeals stated the following regarding interested persons in an estate:

A "person interested in the estate" is "one who has a legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired, benefitted, or in some manner materially affected by the probate of the will." *Abbott v. Foy*, 662 S.W.2d 629, 631 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (holding, in contest of will already admitted to probate, that appellant, as beneficiary under prior will, was person interested in estate because if probated will was void for undue influence or lack of testamentary capacity and prior will was last valid will, appellant, "as [a] beneficiary, has a pecuniary interest in the estate").

358 S.W.3d 358, 364 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The *Evans* Court also noted that:

[B]oth Probate Code section 93, which governs will contests initiated after a will is admitted to probate, and Probate Code section 10, which governs will contests initiated before a will is admitted to probate, require a contestant to be "interested" to have standing to maintain the contest. *See* TEX. PROB. CODE ANN. §§ 10, 93 (Vernon 2003); *see also In re Estate of Redus*, 321 S.W.3d 160, 162 (Tex. App.—Eastland 2010, no pet.) ("A person must have an interest in an estate to have standing to file a will contest.").

*Id.* at 365 n.2.

The will, which has been probated, clearly states that all of the proceeds of Marium's estate pour over into the trust. Neither Marsha nor John are named as beneficiaries in Marium's will. Moreover, the Gilberts do not state, in their live pleading, the precise reasons why Marium's will is invalid in its creation (i.e., Marium lacked testamentary capacity or was unduly influenced when she executed the will). They merely assert that Paschall has refused to account for hundreds of thousands of dollars belonging to the estate.

With regard to accounting, section 149A of the probate code states the following:

(a) Interested Person May Demand Accounting. At any time after the expiration of fifteen months from the date that an independent administration was created and the order appointing an independent executor was entered by the county court, any person interested in the estate may demand an accounting from the independent executor. The independent executor shall thereupon furnish to the person or persons making the demand an exhibit in writing, sworn and subscribed by the independent executor, setting forth in detail:

1. The property belonging to the estate which has come into his hands as executor.

2. The disposition that has been made of such property.

3. The debts that have been paid.

4. The debts and expenses, if any, still owing by the estate.

5. The property of the estate, if any, still remaining in his hands.

6. Such other facts as may be necessary to a full and definite understanding of the exact condition of the estate.

7. Such facts, if any, that show why the administration should not be closed and the estate distributed.

Any other interested person shall, upon demand, be entitled to a copy of any exhibit or accounting that has been made by an independent executor in compliance with this section.

TEX. PROB. CODE ANN. § 149A (West 2003). Therefore, we are back to the main question posed by Paschall's mandamus petition—whether the Gilberts are "interested persons" who could institute suit in this matter.

Attached to the Gilberts' response to Paschall's mandamus petition is an affidavit executed by Marsha on August 3, 2012. Though the affidavit is not file-stamped, it was executed prior to the August 14, 2012 hearing conducted by the trial court on this issue. In addition, Paschall attached deposition testimony from both Marsha and John. Both the deposition testimony and the affidavit contain explanations from the Gilberts as to their interest in this matter.

As stated earlier, Marsha averred in her affidavit that she and John were Marium's first cousins, twice removed. In her deposition, Marsha testified about her family tree, which was allegedly researched by Elizabeth Garzone from Austin, Texas. Marsha noted that:

She [Garzone] actually does a lot of genealogy and she contacted my mother a year ago that someone in her family had married into our family, into the Oscar family, and so she just wanted to let my mother know about it. My mother isn't all with it so I contacted her and we met and she gave me all this information.

Marsha admitted that, in establishing an interest in this matter, she relies on the work of Garzone—an individual whose research is not a part of the record before us and whose background is not established. Marsha also admitted that: "I don't know if all of this is true. I know that some of it is true." When asked about the information that she was

unsure about, Marsha stated that she has not done any work to independently verify the unknown information. Later, Marsha testified that she does not have any evidence that Marium's will does not accurately express Marium's intentions, which would seem to undermine the Gilberts' contention that Marium's will is invalid. Furthermore, Marsha acknowledged that she does not have any evidence to support many of the contentions made in the Gilberts' live pleading, including those alleging that Paschall misappropriated funds from Marium's estate. And finally, Marsha stated that Marium did not owe her money; that she does not have any evidence that "no trust was ever created"; and that she is not suing Paschall for money but simply to "know what happened."

Nevertheless, Paschall has not directed us to any evidence directly controverting the statements made by Marsha in her affidavit and deposition testimony regarding her and John's kinship to Marium. *See Walker*, 827 S.W.2d at 837 (stating that relator must provide the reviewing court with a record sufficient to establish his right to mandamus relief); *In re Blakeney*, 254 S.W.3d 659, 661 (Tex. App.—Texarkana 2008, orig. proceeding). Furthermore, we must keep in mind that a "person interested in the estate" is "one who has a legally ascertained pecuniary interest, real or *prospective*, absolute or *contingent*, which will be impaired, benefitted, or in some manner materially affected by the probate of the will." *Abbott*, 662 S.W.2d at 631 (emphasis added). And finally, we recognize the trial court's role in assessing the credibility of witnesses and resolving conflicts in the evidence. *See LaCroix v. Simpson*, 148 S.W.3d 731, 734 (Tex. App.—Dallas 2004, no pet.) (stating that, in a bench trial, it is for the court, as the trier of

fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the evidence); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied) (noting that, generally, an appellate court may not pass upon the credibility of witnesses or substitute its judgment for that of the trier of fact, even if the evidence would clearly support a different result).

Here, based on the uncontroverted evidence presented, the trial court implicitly concluded that the Gilberts are Marium's heirs at law, meaning they have a contingent pecuniary interest in the estate should they succeed in their claims regarding the validity of Marium's will. *See id.*; *see also* TEX. PROB. CODE ANN. § 3(r); *Evans*, 358 S.W.3d at 364. As such, the Gilberts appear to have a cognizable interest in this estate; therefore, we cannot say that they lack standing in this matter. *See Evans*, 358 S.W.3d at 364; *Abbott*, 662 S.W.2d at 631; *see also Lovato*, 171 S.W.3d at 848; *Nootsie, Ltd.*, 925 S.W.2d at 661. Moreover, because the Gilberts' evidence appears to demonstrate that they are Marium's heirs at law, and because Marium's will pours her entire estate into the disputed trust, it follows that the trust documents are relevant to the Gilberts' claims and, thus, would be discoverable. *See, e.g., Pickelner v. Adler*, 229 S.W.3d 516, 528-32 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).[7] Accordingly, we cannot say that

---

[7] In *Pickelner v. Adler*, the First Court of Appeals explained that a:

> devise attempting (but failing) to leave property in trust is sometimes referred to as a 'semi-secret trust' because the intent to make a trust appears in the will, but the trust's essential terms do not. A semi-secret trust is, in essence, a failed express testamentary trust. As when any express testamentary trust fails, the remedy of a resulting trust arises by operation of law in favor of the testator's heirs, even if parol evidence would have shown that the heirs were not the intended beneficiaries of the failed trust.

Paschall has demonstrated that the trial court clearly abused its discretion in ordering the trust documents to be produced.

## IV. CONCLUSION

Based on the foregoing, we cannot say that Paschall has met his burden of providing this Court with a sufficient record demonstrating a clear abuse of discretion by the trial court. *See* TEX. R. APP. P. 52.3, 52.7; *Walker*, 827 S.W.2d at 837. As such, we cannot conclude that Paschall is entitled to mandamus relief regarding the production of the trust documents. *See Walker*, 827 S.W.2d at 839-40. Accordingly, we deny Paschall's petition for writ of mandamus.[8]


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurring)*
Denied
Opinion delivered and filed February 7, 2013
[OT06]

*(Chief Justice Gray concurs in the denial of the petition for writ of mandamus. A separate opinion will not issue.)

---

229 S.W.3d 516, 528-29 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The Gilberts appear to argue that the trust documents are needed to determine if the trust is indeed a "semi-secret trust," wherein a resulting trust arises by operation of law in favor of them—Marium's purported heirs at law. This argument comports with our conclusion that the trust documents are relevant to the Gilberts' claims and, thus, are discoverable. However, we express no opinion with regard to the validity of the will or the trust.

[8] Furthermore, we dismiss all pending motions in this matter as moot.