

**IN THE**
**TENTH COURT OF APPEALS**

No. 10-13-00285-CV

**IN THE ESTATE OF HENRIETTA CANNON STONE, DECEASED**

**From the 278th District Court**
**Madison County, Texas**
**Trial Court No. 09-11985-278-10**

## OPINION

The Probate Code, now the Estates Code, provides a detailed procedure for the sale of an estate's property by a dependent administrator or executor. That was done in this case. The administratrix of Henrietta Stone's estate found one buyer for a portion of the Estate's property, and after a delay, found another buyer for the same property. The delay worked to the benefit of the Estate. A hearing was held in the trial court to determine which contract would be confirmed; and the court, not surprisingly, selected and confirmed the contract for sale of the Estate's property that was best for the Estate. Because the trial court did not err in confirming one contract and setting aside the other, the trial court's Decree Confirming Sale of Real Property is affirmed.

## BACKGROUND

Henrietta Stone passed away in 2008. She gave the residuary of her estate to Trinity University and The Sons of Hermann. Pursuant to the will, Stone's tangible property was to be sold and the funds delivered to these beneficiaries. A settlement agreement which modified the percentages to be distributed to the agreed "beneficiaries" resolved a will contest.

Stone owned three tracts of land at the time of her death that were to be sold. The Dependent Administratrix, Patricia Orozco-Hardy, filed an application for sale of the three tracts, and the trial court ordered the sale. Orozco-Hardy found a buyer for one of the tracts, a 150 acre tract. That buyer was Ronald R. Johns, Sr. A contract was entered into where Johns would buy the 150 acre tract including the mineral interest. Two years later, Orozco-Hardy found another buyer for the 150 acre tract, C.M. Hadash. Hadash agreed to buy only the surface estate of the tract for a slightly higher price than the Johns contract price. The mineral interest under the Hadash contract was to remain with the Estate, and, as will be explained, ultimately distributed in-kind to the beneficiaries. A report of each "sale" was proffered to the trial court, and after a hearing, the trial court confirmed the sale of the property to Hadash and cancelled the Johns contract.

## SALE OF ESTATE PROPERTY-LAW

The legislature has created a comprehensive statutory scheme that governs estate

administration proceedings to sell estate property. *In re Estate of Bendtsen*, 229 S.W.3d 845, 848 (Tex. App.—Dallas 2007, no pet.); *see* TEX. PROB. CODE ANN. §§ 331-358 (West 2003 & Supp. 2012), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014.; *see also In re Estate of Hill*, 2013 Tex. App. LEXIS 13975 (Tex. App.—Beaumont Nov. 14, 2013). After the filing of a report of sale, which most persons dealing with contemporary conveyances of real property would actually refer to as a contract for sale, the trial court must inquire into the manner of the sale and hear evidence for or against the report, and determine the sufficiency or insufficiency of the representative's general bond, if any. *See* TEX. PROB. CODE ANN. § 355 (West 2003), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014. This is referred to as a "section 355 hearing." If the trial court determines that the sale was for a fair price, proper, and in conformity with the law and has approved any increased or additional bond deemed necessary to protect the estate, the trial court confirms the sale and authorizes the conveyance of the property upon the purchaser's compliance with the terms of the sale. *Id.* Otherwise, the trial court sets the sale aside and orders a new sale. *Id*.

We review the action of the trial court in either confirming or setting aside a sale for an abuse of discretion. *Hirshfield v. Davis*, 43 Tex. 155, 161 (Tex. 1875) ("much weight is due to the large discretion which is unquestionably entrusted to the District Court."). The action of the trial court should be that demanded by the equity of the case and the

best interests of the estate. *Id*. at 161-162. If the land was sold for an unfair or inadequate price, the sale was not "fairly made," and for that reason, should not be confirmed. *James v. Nease*, 69 S.W. 110, 111 (Tex. Civ. App. 1902, writ dism'd). Further, the purchaser has no title to the property unless the sale is confirmed; and, if there is a conflict between his interest and that of the estate, the preference must ordinarily be given in favor of the estate. *Hirshfield*, 43 Tex. at 162; *Nease*, 69 S.W. at 111.

## THE JOHNS CONTRACT

Taking his second issue first, we note that Johns contends the trial court erred by not confirming his contract for sale of the property. Specifically, Johns argues that had Orozco-Hardy filed a report of sale in 2010, when the contract was signed, the sale would have been approved because it was for a fair price at that time.

### *Designation of Expert*

Because it could impact the remainder of our review of this issue if sustained, we will address Johns' sub-issue that the trial court erred in allowing the testimony of Trinity's expert, James Hodges. Specifically, Johns argues that Hodges' testimony should have been excluded because Trinity, although being served with a request for disclosure early in the proceedings, waited until after the section 355 hearing was set to designate Hodges as an expert, thus failing to timely designate Hodges. *See* TEX. R. CIV. P. 193.5(b); 193.6.

Johns filed a motion to exclude evidence in the week prior to the section 355

hearing in which, among other things, he complained about Trinity's lack of timely response to Johns' request for disclosure. The motion was heard and denied immediately prior to the hearing. When Hodges testified, however, no objection to his testimony based on Trinity's untimely designation was made. Thus, because Johns did not object again at the time Hodges testified, his complaint on appeal is not preserved. *See* TEX. R. APP. P. 33.1; *Wilson v. Rice*, 807 S.W.2d 836, 839 (Tex. App.—Waco 1991, writ denied) (objection to testimony of witness at trial is waived by failure to object when witness testifying; motion to exclude presented and heard immediately prior to trial preserves nothing for review). *See also Clark v. Trailways*, Inc., 774 S.W.2d 644, 647-648 (Tex. 1989) (by failing to object when an undisclosed witness is offered at trial, a party denies the trial court the opportunity to review and correct a prior ruling); *Srite v. Owens-Illinois*, 870 S.W.2d 556, 565 (Tex. App.—Houston [1st Dist.] 1993), *rev'd on other grounds by Owens-Illinois, Inc. v. Estate of Burt*, 897 S.W.2d 765, (Tex. 1995).

Accordingly, we overrule Johns' sub-issue and will consider Hodges' testimony in our review of Johns' second issue.

*Evidence*

In 2010, the 150 acre tract had been appraised by Alex Cannon who determined the market value of only the surface interest to be $2,875 per acre, or $432,000 for the entire tract. The value of the mineral estate was not appraised and was not included in the total value of the land. Johns offered $432,000 for the fee simple property, both

surface and mineral interests. Cannon testified at the section 355 hearing that, as between Johns' offer and an offer by Hadash, which was for $435,000 for the surface interest only and the minerals were retained by the Estate, the offer by Hadash was a more favorable offer for the Estate because of the mineral activity in the area. James Hodges, an oil and gas consultant who had appraised mineral interests for 15 to 20 years, analyzed the mineral formations and production in the area and appraised the minerals of the property at a range of $1,143 to $6,853 per mineral acre. He opined that if he owned a tract of land and it was going to be sold, he would not sell the minerals with it.

Johns' expert, Professor Stanley Johanson, agreed that an estate with the potential for producing minerals would be more valuable than an estate with no such potential. He also agreed that if this Estate sold the surface and mineral interests to Johns for the same price as it could sell the surface interest only to Hadash, the Estate would lose the benefit of retaining the minerals. Although Johanson testified that the will only gave the beneficiaries the right to the proceeds of the sale of the property, not a portion of the interest in the property such as the mineral interest, he agreed that it was the responsibility and power of the probate court to decide whether a sale of estate property was for a fair price.

Johns' certified real estate appraiser, Matthew Whitney, evaluated the property in 2011 and in 2012 and determined a fair market value of the property to be $3,000 an

acre, or $450,000 for the entire tract. He believed Johns' offer of $432,000 to be within a reasonable range. He further testified that he adjusted the value of the land for the minerals but also agreed that he was unable to separately evaluate the mineral interest because mineral interests were rarely sold in the area. He also stated that he had no training to appraise only the value of oil and gas minerals in place.

At the section 355 hearing, Orozco-Hardy recommended that the trial court accept the Hadash offer because Hadash was willing to pay the appraised value for the surface only and the beneficiaries would be able to retain the minerals. Orozco-Hardy also testified she had never been instructed by the beneficiaries to include any part of the minerals in the sale of the property. When Orozco-Hardy signed the Johns contract, she was assured by the real estate agent, Don Lasiter, that the contract did not convey any minerals to Johns. Later, when she was told that the contract did not reserve any minerals to the estate, she sent an email to Johns the same day informing him that the minerals were not intended to be conveyed. She testified that she did not file a report of sale because of the problem with the mineral conveyance.

Deposition testimony of Johns which was introduced at the section 355 hearing showed that before the contract was signed, Johns knew the minerals were not to be conveyed with the property. A series of emails introduced between Johns and Lasiter showed that Lasiter reminded Johns that from the start, Johns knew no minerals were to be conveyed and informed Johns that the contract provision including the conveyance

of the minerals was "an honest mistake." Further, the Johns contract, introduced into evidence, shows it became "null and void" on October 24, 2010, before the end of the 30 day period in which Hardy would have filed a report of sale pursuant to section 353 of the Probate Code. *See* TEX. PROBATE CODE ANN. § 353 (West 2003), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014.

*Argument*

Johns contends the sale to him should have been confirmed because Orozco-Hardy was required to file a report of sale within 30 days from the date of the "sale" and did not, and his contract was for a fair price in the relevant year of 2010. *See* TEX. PROBATE CODE ANN. §§ 353, 355 (West 2003), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014.

It was said long ago by the Texas Supreme Court that

> The mere fact of failure to return the account of sale within thirty days, as directed by the statute, unaccompanied by any circumstances showing that the delay of a few days had produced any injury or disadvantage to the estate or purchaser, could hardly be entertained as a ground of setting aside the sale. The important matter in this requisition of the statute is, that an account of sale shall be returned to the court for its action; the time of thirty days, which is fixed upon during which the administrator is required to perform this act, is directory, and may become material in reference to other circumstances; but not in the abstract, as presented in this case.

*Brown v. Hobbs*, 19 Tex. 167, 169 (Tex. 1857). Johns distinguishes this passage from *Brown* because the delay here was two years and, he argues, he was injured or disadvantaged because Trinity's expert would not have been able to testify about the

value of the mineral interest at that time. We disagree with Johns' argument.

There is no reason to believe that, had there been a report of sale and a section 355 hearing in 2010, Trinity would not have hired an expert to specifically evaluate the mineral interest at that time. Orozco-Hardy testified that she did not know Johns had accepted her counter offer until late September or early October 2010. She also testified that there was not enough time at that point to notice all the parties and set a section 355 hearing within 30 days. Further, once she learned of a problem with the mineral interest conveyance, which was counter to the instructions by the beneficiaries, she decided not to file the report of sale. Additionally, the Johns contract expired within 30 days from the time Orozco-Hardy knew Johns had accepted her counter offer. Further, Johns knew from the beginning of negotiations that the mineral interest would not be conveyed with the property. Thus, from this evidence, there was no showing that Johns was injured or disadvantaged by the failure to file the report of sale within 30 days.

*Conclusion*

Although it seems obvious when stated, because the trial court could have determined that a sale that included the surface and mineral interests at the appraised value of the surface only would not be in the best interest of the Estate, the trial court could have found that the Johns contract was not "fairly made" or was made for an inadequate price.

Accordingly, the trial court did not abuse its discretion in not confirming the

Johns contract. Johns' second issue is overruled.

**THE HADASH CONTRACT**

In his first issue, Johns argues that the trial court erred in confirming the Hadash contract because it was not in compliance with the law, the will, or the procedures pursuant to the Texas Probate Code.

According to the Probate Code, once a report of sale is made, the court inquires into the manner in which the sale was made, hears evidence in support of or against such report, and determines the sufficiency or insufficiency of the representative's general bond, if any, and if "satisfied that the sale was for a fair price, was properly made and in conformity with the law," the court renders a decree confirming the sale. TEX. PROBATE CODE ANN. § 355 (West 2003), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014.

Johns' argument takes issue with only the "in conformity with the law" prong of the section 355 confirmation of sale to Hadash and complains that because the provision for disbursement in the will was not followed and the application and order for sale contemplated the sale of 100% of the property interest, that being both surface and mineral interests, the trial court had no authority to confirm the Hadash contract which was for the surface interest only. We disagree with Johns' argument.

*The Will*

The will of Henrietta Stone provided that her beneficiaries would receive the

proceeds from the sale of the residuary of her tangible property. A settlement agreement entered into by the beneficiaries did not alter this arrangement. However, there is nothing within section 355 that requires compliance with the disbursement provisions in a will within the phrase, "in conformity with the law." Section 355 provides only that the decree confirming the sale show conformity with the "foregoing provisions of the Code" which we interpret to mean the provisions regarding the sale of property. *Id*. Johns has cited us to no case authority, and we have found none, that requires a sale be in conformity with the will before a sale can be confirmed.

Further, Johns has no standing to question the decision of the administratrix to disburse the Estate in a manner contrary to the will. According to longstanding Texas law,

> Any person interested in an estate may, at any time before any issue in any proceeding is decided upon by the court, file opposition thereto in writing and shall be entitled to process for witnesses and evidence, and to be heard upon such opposition, as in other suits.

TEX. PROB. CODE ANN. § 10 (Vernon 2003), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014; *In re Estate of Bendtsen*, 230 S.W.3d 832, 833 (Tex. App.—Dallas 2007, pet. denied). The code defines "interested persons," in relevant part, as "heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered . . ." *Id*. § 3(r), repealed by Acts 2009, 81st Leg., ch. 680 (H.B. 2502), § 10(a), effective January 1, 2014. Johns does not fall within any of these statutory categories, nor does he have any pecuniary interest in the Estate, which

Texas law requires. *See In re Estate of Bendtsen*, 230 S.W.3d at 834, citing *Logan v. Thomason*, 202 S.W.2d 212, 215 (Tex. 1947) ("The interest referred to must be a pecuniary one, held by the party either as an individual or in a representative capacity, which will be affected by the probate or defeat of the will.").

Thus, the fact that the disbursement of the proceeds of the estate is contrary to the provision of the will is of no consequence in this § 355 hearing.

*The Application for Sale and Order for Sale*

Johns also argues that because the application for sale and the order for sale contemplate the sale of the entire 150 acre tract, including both surface and mineral interest, the court could not confirm a sale of only the surface interest of the tract. He relies on the opinions in *Walker*, *Vineyard*, and *Andrews* for the proposition that in this particular fact pattern, the confirmation would be invalid. In *Walker*, no order of sale was ever entered; thus the decree confirming the sale was invalid. *Walker v. Sharpe*, 807 S.W.2d 448, 451 (Tex. App.—Corpus Christi 1991, writ denied). In *Vineyard*, the question for the appellate court to answer was whether an order of sale was a final, appealable order. *Vineyard v. Irvin*, 855 S.W.2d 208 (Tex. App.—Corpus Christi 1993, no writ). In *Andrews*, the question was whether the probate court had the authority to correct the confirmation order and the deed from the administrators. *Andrews v. Koch*, 702 S.W.2d 584 (Tex. 1986). In reaching its conclusion, the Texas Supreme Court determined that both an order of sale and a confirmation of the sale are necessary for a

valid transfer of property from an estate. *Id*. at 586. None of these cases support Johns'

argument.

Here, we have an application, an order, and a decree confirming the sale. The

Application for Sale of Real Property describes three separate tracts of land to be sold

and lists the Estate's interest in each tract as 100%. It does not, as Johns argues, request

the sale of 100%, all surface and mineral interests, of the Estate property. Further, the

Order of Sale of Real Property orders that the property described in the order, the three

tracts of land with no percentage indicated, be sold at a private sale for cash. It does

not, as Johns also argues, require the sale of the fee simple interest, 100%, in essence

surface and mineral interests, of each tract. Just as the Probate Code does not require

the sale of *all property* listed in an application and an order to one buyer, there is no

statutory prohibition to confirming a sale of a lesser interest in property when a fee

simple interest is listed in the application and the order for sale as being owned by the

Estate. *Cf. Carson v. Estate of Carson*, 601 S.W.2d 171, 174 (Tex. App.—Corpus Christi

1980, writ ref'd n.r.e.) ("There is nothing in the Texas Probate Code which requires that

the minerals be severed from the surface and that either the surface or the minerals be

sold separately."). To follow Johns' argument to its logical extension, neither Johns' nor

Hadash's contracts could be confirmed because neither were for a purchase of 100% of

the Estate's real property, in essence, all three tracts of land identified in the application

to sell and the order of sale. Thus, the trial court could confirm a sale of less than the fee

simple interest owned by the Estate in any tract identified in the order of sale.

Accordingly, the trial court had the authority to confirm the Hadash contract, and Johns' first issue is overruled.

**CONCLUSION**

Having determined that the trial court did not abuse its discretion in failing to confirm the Johns contract and that the trial court had the authority to confirm the Hadash contract, we affirm the trial court's Decree Confirming Sale of Real Property which confirmed the sale of the 150 acres of surface interest only to Hadash.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 2, 2014
[CV06]

