Opinion by Justice Burgess
Michael Lee filed a petition contesting the probate of the second codicil to the will of Lucy Elizabeth Lee. The trial court dismissed Lee's petition based on lack of standing. We affirm the trial court's judgment.
I. Background
A. The Will
Following the death of Lucy Elizabeth Lee (Lucy) on July 14, 2016, the trial court issued an order admitting three instruments to probate: (1) Lucy's October 10, 2013, will (the Will), (2) Lucy's March 30, 2015, first codicil to the will (First Codicil) and (3) Lucy's July 6, 2016, second codicil to the will (Second Codicil). In the Will, Lucy left her residuary estate to the Lucy E. Lee Family Trust (the Trust). Lucy's son, Jack O'Guinn (O'Guinn), was named as the lifetime income beneficiary of the Trust and as beneficiary of the Trust principal for medical expenses not covered by insurance. The Trust's remainder beneficiaries were Lucy's step-grandson, Lee, and Lucy's grandson, Jack Lindsay O'Guinn (Jack).
B. The First Codicil
The First Codicil kept O'Guinn as the lifetime income beneficiary of the Trust. It also removed the restriction on O'Guinn's access to the Trust principal for medical expenses not covered by insurance. However, *806 it removed Lee and Jack as remainder beneficiaries. Instead, it substituted Lucy's niece, Mary Elizabeth Whitten, or Whitten's surviving issue, as the Trust's sole remainder beneficiary.
C. The Second Codicil
In the Second Codicil-which was signed eight days before Lucy's death-Lucy eliminated the Trust altogether and left the entirety of her estate to O'Guinn free and clear of the Trust. The Second Codicil reads, "I hereby bequeath and give to my son, Jack Robert O'Guinn, all of my personal property, household goods, jewelry, stocks and bonds and all of the money I have at Texas Bank and Trust and the Bank of Albuquerque."
D. The Agreement Between Lee And Whitten
In November 2016, Lee and Whitten entered into a written agreement (the Agreement). Under the terms of the Agreement, Lee agreed to contest the admission to probate of the Second Codicil, and Whitten agreed to give Lee forty percent of anything she recovered under the Will and First Codicil. The Agreement also stated that it was being made in consideration of the parties' mutual release and settlement of
any and all claims and causes of action between themselves or claims and causes of action which can, have been or could have been made in Cause No. 2016-0243E in the County Court at Law No. 2 of Gregg County, Texas, or any other court of competent jurisdiction that in any way relate to the probate and non-probate assets of Lucy E. Lee and her estate.[1 ]
E. The Litigation
Following the execution of the Agreement, Lee filed the present action contesting probate of the Second Codicil. In his petition, Lee claimed, among other things, that the statutory requirements for probating the Second Codicil had not been satisfied.[2] He also alleged that Lucy was incapacitated and unduly influenced by O'Guinn at the time the Second Codicil was executed. O'Guinn responded to Lee's petition contesting probate of the Second Codicil by filing a motion in limine to dismiss Lee's petition. In his motion in limine, O'Guinn argued that Lee does not have standing to contest the probate of the Second Codicil.
O'Guinn raised two arguments challenging Lee's standing. First, he argued that *807 Lee is not an "interested person" under Texas law. Second, O'Guinn argued that, because the Trust is a spendthrift trust, and because the Agreement constitutes an alienation of an interest in a spendthrift trust, the Agreement is invalid as a matter of law. Lee responded with his own motion in limine, claiming that O'Guinn did not have standing to challenge the Agreement because he was not a party to it. The trial court ultimately agreed with O'Guinn and dismissed Lee's petition.
II. Appellate Issues
On appeal, Lee maintains (1) that he was not required to contest the First Codicil in order to have standing to contest the Second Codicil because he was a beneficiary under the original Will and, therefore, an interested person under Texas law, (2) that O'Guinn does not have standing to allege that the Agreement is invalid or unenforceable, and (3) that, even if O'Guinn did have standing to challenge the Agreement, the trial court erred in finding the Agreement invalid because the Trust was not an active spendthrift trust.
III. Standard of Review
Standing is implicit in the concept of subject-matter jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd. , 852 S.W.2d 440, 444-45 (Tex. 1993). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome...." Austin Nursing Ctr., Inc. v. Lovato , 171 S.W.3d 845, 848 (Tex. 2005). To have standing, the plaintiff "must have suffered a 'concrete injury' and a 'real controversy' must exist between the parties such that it can be resolved by the court." In re Estate of Forister , 421 S.W.3d 175, 177 (Tex. App.-San Antonio 2013, pet. denied) (quoting Heckman v. Williamson Cty. , 369 S.W.3d 137, 154 (Tex. 2012) ). A court must dismiss a claim if the plaintiff lacks standing to assert it, and it must dismiss the entire action for want of jurisdiction if the plaintiff lacks standing to assert any of its claims. Heckman v. Williamson Cty. , 369 S.W.3d 137, 150-51 (Tex. 2012).
We consider the trial court's order on a motion to dismiss for lack of standing in the same manner as a plea to the jurisdiction. Forister , 421 S.W.3d at 178. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact[-]finder." Tex. Dept. of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 227-28 (Tex. 2004). Conversely, "if the relevant evidence is undisputed or fails to raise a fact [issue] on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." Id. at 228. Whether a plaintiff has standing is a legal question we review de novo. See Mayhew v. Town of Sunnyvale , 964 S.W.2d 922, 928 (Tex. 1998). The facts here are undisputed.
IV. Analysis
A. Lee Does Not Have Standing to Contest Only the Second Codicil
1. Introduction
Because Lee's interest as a remainder beneficiary was terminated by the First Codicil, Lee would need to successfully challenge both the Second and the First Codicils to recover under the Will. In other words, even if Lee successfully contests the Second Codicil, he will still not recover anything from Lucy's Estate because the First Codicil would still be in place and that Codicil removed him as a remainder beneficiary. Yet, Lee did not challenge the First Codicil.[3] Consequently, the trial *808 court ruled that Lee did not have standing to contest only the Second Codicil. Nevertheless, Lee asserts that he has standing to challenge only the Second Codicil because he is an interested person in the Will-as that term is defined by Texas law-and an interested person has standing to contest any later will or codicil. Thus, we must first address whether Lee is, in fact, an "interested person" in the Will under Texas law.
2. Lee's Standing as a Former Remainder Beneficiary Does Not Make Him An Interested Party
Lee first points to Section 256.204 of the Texas Estates Code in support of his argument. See TEX. ESTATES CODE ANN. § 256.204(a) (West 2014). That statute provides:
After a will is admitted to probate, an interested person may commence a suit to contest the validity thereof not later than the second anniversary of the date the will was admitted to probate, except that an interested person may commence a suit to cancel a will for forgery or other fraud not later than the second anniversary of the date the forgery or fraud was discovered.
Id. Lee then asserts that the term "interested person" is defined by statute as "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." TEX. ESTATES CODE ANN. § 22.018(1) (West 2014). Finally, he points to caselaw that holds, "A 'person interested in the estate' is one who has a legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired, benefitted, or in some matter materially affected by the probate of the will." Abbott v. Foy , 662 S.W.2d 629, 631 (Tex. App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.).
Lee asserts that he satisfies both definitions of an interested person. First, he notes that he satisfies the statutory definition because he is named as a devisee in the Will and has "a property right in or claim against" Lucy's estate. TEX. ESTATES CODE ANN. § 22.018(1). Then, he proposes two arguments that he claims satisfy the caselaw definition, i.e., that he has a pecuniary interest in the Will that "will be ... materially affected by the probate of the [Second Codicil]." Abbott , 662 S.W.2d at 631. First, he argues that, if the Agreement is determined to be invalid, unenforceable, or breached, he would have the right to file subsequent litigation to challenge the First Codicil, and if that subsequent challenge is successful, he would recover fifty percent of "what remains after the termination of O'Guinn's $5.5 million dollar lifetime trust." Second, he argues that, under the Agreement, he is entitled to recover a forty percent share of what Whitten recovers if the Second Codicil is invalidated, even if the First Codicil remains in force, and that his forty percent interest under the Agreement will be impaired if the Second Codicil remains in force. Consequently, Lee argues that he has standing to contest the Second Codicil. See Muse, Currie & Kohen v. Drake , 535 S.W.2d 343, 344 (Tex. 1976) (per curiam) (standing requires pecuniary interest which will be affected by the probate or defeat of the will). Lee fails under both definitions.
First, Lee fails under the statutory definition because he does not have "a property right or a claim against" Lucy's estate. TEX. ESTATES CODE ANN. § 22.018(1). Rather, he has only a potential right or claim against her estate. Specifically, even if Lee successfully challenges the Second Codicil, he still would not recover anything from Lucy's estate because his former remainder interest was terminated by the First Codicil. Stated another way, even if Lee gains all he seeks in this litigation, he would still be unable to demand anything *809 from the administrator of Lucy's estate or the trustee of the Trust. To reach that point, Lee would have to successfully challenge the First Codicil as well. Thus, at best, Lee has "a [potential] property right or claim against" Lucy's estate, but he does not have an actual one against it. See id.
Likewise, Lee fails under the caselaw definition because his alleged pecuniary interest is too far removed from Lucy's estate. Although Lee relies on Abbott and Muse to support his arguments, those cases actually support the opposite conclusion.
In Abbott , Foy filed an application to probate a will executed by Abbott, which named Foy as the sole beneficiary. Abbott , 662 S.W.2d at 630. Abbott's stepson filed a will contest claiming that Abbott lacked testamentary capacity when she executed the will. After Foy filed a motion to dismiss, alleging that the stepson had no interest in the estate, the stepson offered for probate Abbott's earlier will and codicil, which named him as a beneficiary. Id. at 630-31.
In reversing the trial court's dismissal of the will contest in Abbott , the court of appeals recognized that, "[i]n showing an interest by reason of a prior will, it is not necessary to develop facts necessary to entitle the will to probate." Id. at 632 (citing Hamilton v. Gregory , 482 S.W.2d 287 (Tex. Civ. App.-Houston [1st Dist.] 1972, no writ) ). The court went on to say that, if the earlier "will is indeed the valid last will of the testatrix, appellant, as beneficiary, has a pecuniary interest in the estate. However, these matters need not be proved in a preliminary hearing to determine a contestant's interest in the estate." Id. at 631-32. Lee relies on this language to support his claim here.
Nevertheless, in Abbott , either Foy or Abbott's stepson was going to recover: if the will contest succeeded, Abbott's stepson would recover under her first will; if not, Foy would recover under her second will. Therefore, Abbott's stepson was only one step removed from recovering under the earlier will and codicil he tendered for probate. Here, Lee is two steps removed from recovering under Lucy's Will. Even if Lee successfully contests the Second Codicil, the First Codicil will remain in force, and Lee's remainder interest was terminated by the First Codicil. Accordingly, the contest of the Second Codicil, whether successful or not, will have no effect on Lee's status as a devisee under the Will in this case.
In Muse , a law firm complained of the appellate court's denial of its claim against Duncan's estate for expenses incurred by its client, the administratrix, in the trial and appeal of a will contest. Muse , 535 S.W.2d at 343. Muse claimed that the administratrix had a right to prosecute the will contest suit in her representative capacity as an "interested party." Id. In so holding, the court defined a person interested in the estate as one having
a pecuniary [interest], held by the party either as an individual or in a representative capacity, which will be affected by the probate or defeat of the will. An interest resting on sentiment or sympathy, or any other basis other than gain or loss of money or its equivalent, is insufficient. Thus the burden is on every person contesting a will, and on every person offering one for probate, to allege, and, if required, to prove, that he has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefited, or in some manner materially affected, by the probate of the will.
Id. at 344 (quoting Logan v. Thomason , 146 Tex. 37, 202 S.W.2d 212, 215 (1947) ).
As in Abbott , this broad statement of the law does not assist Lee. Because the administratrix in Muse represented the estate, *810 and not the heirs of the estate, a successful contest would not result in a pecuniary benefit to the estate, but instead would benefit the heirs of the estate. Id. In other words, the Administratrix was not pursuing the pecuniary interest of the estate whom she represented, but instead was pursuing the pecuniary interest of the heirs whom she did not represent. Therefore, the administratrix was not an interested person. Id.
Consequently, notwithstanding the broad, general statements of law in Abbott and Muse cited by Lee, neither case stands for the proposition that any person who was ever listed as a devisee under an original will is an interested party no matter how many intervening wills or codicils stand between him and recovery under the original will. Rather, in Abbott , the court of appeals simply pointed out that the contestant in that case was not required, at the in limine stage, to prove that the earlier will was valid. Likewise, in Muse , the court of appeals merely held that, to be an interested party, the contestant must be pursuing his own pecuniary interest, not someone else's.
Indeed, it has long been recognized that standing to contest a will requires a pecuniary interest that will be directly and immediately affected by the probate or the defeat of the will. See Logan v. Thomason , 146 Tex. 37, 202 S.W.2d 212, 215 (1947) ; In re Estate of Stone , 475 S.W.3d 370, 377 (Tex. App.-Waco 2014, pet. denied) ; Cranberg v. Wilson , No. 03-03-00389-CV, 2004 WL 101794, at *2 (Tex. App.-Austin Jan. 23, 2004, no pet.) (mem. op.) ("The only interest that grants standing to contest a will is a pecuniary one that will be affected by the probate or the defeat of the will."); Maurer v. Sayre , 833 S.W.2d 680, 682 (Tex. App.-Fort Worth 1992, no writ) (same).[4] Here, Lee's contest of the Second Codicil alone, even if successful, would not affect his pecuniary interest in any way, absent consideration of the Agreement. Consequently, Lee's status as a remainder beneficiary under the Trust established in the Will is insufficient to confer standing to contest only the Second Codicil.
3. The Agreement Does Not Make Lee An Interested Person
We must next determine whether the Agreement is valid. But initially, we must address whether O'Guinn has standing to challenge its validity.
a. Does O'Guinn Have Standing to Challenge the Validity of the Agreement?
Lee contends that, because O'Guinn was not a party to the Agreement, he has no standing to challenge it. In support of this position, Lee relies on the holding of our sister court that "generally someone who is not a party to an agreement has no interest in the terms of that contract" and that "[o]nce rejected, an offeror has no further rights regarding any subsequent contract the offeree may enter." El Paso Cmty. Partners v. B&G/Sunrise Joint Venture , 24 S.W.3d 620, 626 (Tex. App.-Austin 2000, no pet.).[5] While it *811 is true that a third party generally lacks standing to challenge the validity of a contract, the issue here is not whether O'Guinn had standing to void the Agreement between Lee and Whitten, but instead whether he could question the validity of the Agreement to defend against Lee's probate action. We conclude that O'Guinn was entitled to do so.
Standing is a question involving whether a party may bring a claim sufficient to invoke the court's subject-matter jurisdiction, which is a constitutional prerequisite to maintaining suit. Sherman v. Boston , 486 S.W.3d 88 (Tex. App.-Houston [14th Dist.] 2016, pet. denied). "It is well settled that the contestant of a will bears the burden of proving his standing." See In re Estate of Perez-Muzza , 446 S.W.3d 415, 419 (Tex. App.-San Antonio 2014, pet. denied) (citing Womble v. Atkins , 160 Tex. 363, 331 S.W.2d 294 (1960) ). Moreover, subject-matter jurisdiction cannot be conferred on the court by agreement of the parties or by waiver, and in the absence of subject-matter jurisdiction, *812 a court has no authority to act. Dubai Petroleum v. Kazi , 12 S.W.3d 71, 76 (Tex. 2000) ; Fed. Underwriters Exch. v. Pugh , 141 Tex. 539, 174 S.W.2d 598, 600 (1943). Likewise, "[s]tanding is never presumed...." Gribble v. Layton , 389 S.W.3d 882, 886 (Tex. App.-Houston [14th Dist.] 2012, pet. denied) (citing Tex. Ass'n of Bus. , 852 S.W.2d at 444-45 ).
Therefore, Lee cannot establish standing-and thereby invoke the trial court's subject-matter jurisdiction-simply by arguing that O'Guinn is powerless to challenge the source of his standing. Rather, he must present sufficient, affirmative evidence showing that he has standing. While the Agreement is certainly some evidence of standing, it is not sufficient to meet Lee's burden of proof if it is invalid. To hold that O'Guinn is powerless to raise questions concerning the Agreement's validity-especially in light of the Will's spendthrift provisions-would amount to standing by default, and it would permit Lee to use the Agreement as both a sword and a shield.
The Agreement is integral to the issue of Lee's standing to challenge the Second Codicil. If the Agreement is invalid, Lee does not have standing. Therefore, by basing his standing on the Agreement, Lee consents to scrutiny of the Agreement's validity in this litigation even if O'Guinn would be unable to do so otherwise. Consequently, O'Guinn was entitled to challenge the Agreement.
b. The Trial Court Properly Concluded that the Agreement is Inadequate to Support Lee's Standing to Challenge the Second Codicil
Under the Agreement, a successful contest of the Second Codicil would entitle Lee to forty percent of the value of the Trust after O'Guinn is no longer living. Lee is entitled to nothing in the event of an unsuccessful contest. Here, however, the trial court determined that the Agreement is invalid because the Will's spendthrift clause prevented Whitten from assigning her residuary interest under the Trust.[6]
i. Scope of the in Limine Proceeding
Lee initially contends that the trial court erred in finding that the Agreement is invalid, because such a determination was beyond the scope of the in limine proceeding. Lee claims that the trial court reached beyond the issue of standing and instead ruled on a merits-based issue. We disagree.
"The immediate issues involved in a proceeding to determine interest in the estate are distinct and separate, and are not to be blended with issues finally determinative of the particular litigation." Abbott , 662 S.W.2d at 632. Consequently, *813 "when a contestant's standing is challenged, the in-limine hearing is limited to a determination of the contestant's justiciable interest in the litigation" as distinct from "the ultimate substantive issues." In re Estate of Redus , 321 S.W.3d 160, 163 (Tex. App.-Eastland 2010, no pet.). This rule thus prohibits decisions reaching the merits of a will contest at the in limine stage of the proceedings. See In re Estate of Holley , No. 11-15-00173-CV, 2017 WL 549009, at *4 (Tex. App.-Eastland Feb. 10, 2017, pet. denied) (mem. op.).
Here, however, the question of whether the Agreement is valid goes directly to the issue of Lee's standing to contest the Second Codicil, not whether the Second Codicil is valid. This issue is not the type of merits-based decision that reaches issues "finally determinative of the particular litigation." Abbott , 662 S.W.2d at 632. The trial court, therefore, properly addressed this issue.
ii. The Will Established a Spendthrift Trust
Although "[b]eneficial interests in trusts are generally assignable ..., assignments of such interests are invalid when they are subject to a spendthrift provision in the trust." Faulkner v. Bost , 137 S.W.3d 254, 260 (Tex. App.-Tyler 2004, no pet.). The Texas Property Code provides,
(a) A settlor may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.
(b) A declaration in a trust instrument that the interest of a beneficiary shall be held subject to a "spendthrift trust" is sufficient to restrain voluntary or involuntary alienation of the interest by a beneficiary to the maximum extent permitted by this subtitle.
(c) A trust containing terms authorized under Subsection (a) or (b) of this section may be referred to as a spendthrift trust.
TEX. PROP. CODE ANN. § 112.035 (West Supp. 2017). Because Lee relies upon the Agreement to establish standing, we must determine whether the Trust is a spendthrift trust.
Lucy's Will places the residue of her estate in the Trust and names Texas Bank and Trust Company as the trustee. The Will further provides:
To the extent permitted by law, every trust created under this document shall be a spendthrift trust. No beneficiary may anticipate, by assignment or otherwise, the beneficiary's beneficial interest in the principal or income of the trust estate. No beneficiary may sell, transfer, encumber, or in any way charge the beneficiary's interest in trust income or principal prior to actually receiving it. Neither the income nor the principal of any trust shall be subject to any execution, garnishment, attachment, bankruptcy, claims for alimony or support, other legal proceeding of any character, legal sequestration, levy or sale, or in any other event or manner be applicable or subject, voluntarily or involuntarily, to the payment of a beneficiary's debts.
The First Codicil republishes this spendthrift clause.[7] Therefore, the Trust is a *814 spendthrift trust.
Yet, Lee contends that, even though the Will and First Codicil contain language necessary to create a spendthrift trust, the Trust is still not a spendthrift trust because it is not active. He argues that the Trust is merely passive because the Second Codicil directs all estate property to O'Guinn, free of Trust, and therefore, the Trust was never funded. Lee then notes that, under Texas law, a spendthrift trust must be based on an active trust. Lee's argument is misplaced.
It is true that "[a] spendthrift trust must be based on an active trust. If it is merely passive or inactive, there can be no spendthrift trust." Long v. Long , 252 S.W.2d 235, 247 (Tex. Civ. App.-Texarkana 1952, writ ref'd n.r.e.). Likewise, "[a] trustee who has no duty except to make payments as they become due is the trustee of a 'passive' or 'dry' trust." Daniels v. Pecan Valley Ranch, Inc. , 831 S.W.2d 372, 379 (Tex. App.-San Antonio 1992, writ denied). Moreover, "[i]f a trustee is not given affirmative powers and duties, the trust is 'passive' or 'dry,' and legal title is vested in the beneficiaries, not the named trustee." Nolana Dev. Ass'n v. Corsi , 682 S.W.2d 246, 249 (Tex. 1984). Consequently, "[A] merely passive trust cannot constitute a valid spendthrift trust because the beneficiary is considered the real owner of the property." Daniels , 831 S.W.2d at 379.
It is also true that active trusts impose duties on the trustee, while inactive or passive trusts do not. See Corsi , 682 S.W.2d at 249. For example, in Long , this Court held that the trust was not active because the trustee had no designated duty except to make ministerial monthly payments from deposited funds. See Long , 252 S.W.2d at 248.[8] "[U]nless discretion is specifically given to the trustee to determine the time or amount of the trust payments or the purpose to which those payments will be applied, or unless other express words of restraint are contained in the instrument creating the trust, the revenue may be anticipated, or assigned by the beneficiary, or made subject *815 to the payment of his or her debts." TEXAS PRACTICE GUIDE : WILLS , TRUSTS AND ESTATE PLANNING § 5:97 (2016) (citing Long , 252 S.W.2d at 235 ).
Nevertheless, the Trust in this case was active, not passive. To begin with, we measure the Agreement's validity against the will and First Codicil-not the Second Codicil-and by that measure, the Trust will have been fully funded on the date of Lucy's death if Lee succeeds in this litigation.[9] Texas law provides that, "if a person dies leaving a lawful will ... all of the person's estate that is devised by the will vests immediately in the devisees." TEX. ESTATES CODE ANN. § 101.001(a)(1) (West 2014). When a will is contested and another will is offered in its stead, the question becomes which of the two wills is the lawful will. Since the testator's death is the event which allows a will to be probated, then a determination of lawfulness will always occur after the testator's death.
Yet, regardless of which will is declared to be the lawful will, the vesting under the lawful will already occurred at the testator's death. See Welder v. Hitchcock , 617 S.W.2d 294, 297 (Tex. Civ. App.-Corpus Christi 1981, writ ref'd n.r.e.) ("[T]itle to an estate vests in the heirs immediately upon the death of the decedent. There is never a time when title is not vested in someone."). Thus, a subsequent determination of lawfulness merely establishes which of the competing heirs received title immediately upon the testator's death. Consequently, if Lee successfully challenges the Second Codicil, then Lucy's lawful will will consist of the Will as modified by the First Codicil, but the Trust created by the Will will have been fully funded at Lucy's death by operation of law.
Moreover, the Trust language demonstrates that the Trust is active. Specifically, the First Codicil provides,
If [sic] give the rest and residue of my estate to the Trustee named below to be held, administered, and distributed as the "Lucy E. Lee Family Trust," as follows:
(1) Discretionary Payments. My Trustee may pay to or apply for the benefit of my son Jack Robert O'Guinn, such sums from the net income and/or principal of the Lucy E. Lee Family Trust in convenient installments and in such shares and proportions as in its sole discretion shall be necessary or advisable for the medical care, education, support and maintenance in reasonable comfort of my son, taking into consideration to the extent my Trustee deems advisable, any other income or resources of my son known to my Trustee.
This Trust provision affords the trustee broad discretionary power over the Trust's income and corpus. The trustee is given duties, terms, and conditions to meet. Consequently, and in combination with the Will's spendthrift provision, the Trust is a spendthrift trust. See Lanius v. Fletcher , 100 Tex. 550, 101 S.W. 1076, 1078 (1907)
*816 (active trust envisions duties for the trustee to perform); Long , 252 S.W.2d at 248.
Accordingly, the Trust created by the Will and First Codicil was active and was a spendthrift trust. Any attempt to assign an interest in an active trust made under circumstances that violate the prohibitions of a governing spendthrift provision will be ineffectual to afford the putative assignee any interest in the trust's assets. Faulkner , 137 S.W.3d at 260. Consequently, the Agreement is invalid as an attempted alienation of an interest in a spendthrift trust. Because Lee relies on the Agreement to give him standing, the trial court correctly dismissed Lee's petition.
c. Neither Public Policy nor the Testator's Purpose and Intent Are Violated by Enforcement of the Trust's Spendthrift Provisions
Lee argues that, even if the Trust is a spendthrift trust, the spendthrift clause should not be enforced to invalidate Lee's settlement agreement with Whitten because enforcement would (a) violate public policy favoring settlement of claims and (b) violate the testator's purpose and intent.
i. Enforcement of the Spendthrift Clause Does Not Violate Public Policy
In support of his contention that enforcement of the spendthrift clause would violate public policy favoring settlement of claims, Lee relies on Transport Insurance Co. v. Faircloth , 898 S.W.2d 269 (Tex. 1995). In that case, the Texas Supreme Court reiterated that "[p]ublic policy favors the amicable settlement of controversies." Id. at 280 (citing Elbaor v. Smith , 845 S.W.2d 240, 250 (Tex. 1992) ). By enforcing the Trust's spendthrift provisions to invalidate the Agreement, Lee argues, the trial court violated the public policy encouraging settlement of litigation.
Here, however, there is no apparent controversy between Lee and Whitten. Both dispute the validity of the Second Codicil.[10] Moreover, the issue of whether the Agreement is invalid and unenforceable as between Lee and Whitten is not before us, only whether that Agreement may be used by Lee to create standing to challenge the Second Codicil.[11] Therefore, nothing in the trial court's ruling or our opinion violates the public policy of this State.
ii. Enforcement of the Spendthrift Clause Does Not Violate Lucy's Intent
Lee next claims that enforcement of the spendthrift clause against the settlement agreement would violate the testator's purpose and intent in creating the Trust. See Lee v. Rogers Agency , 517 S.W.3d 137, 145 (Tex. App.-Texarkana 2016, pet. denied) ("The overriding principle to be observed in construing a trust instrument is to ascertain the settlor's intent with the view of *817 effectuating it.") (citing Parrish v. Mills , 101 Tex. 276, 106 S.W. 882 (1908) ); Coffee v. William Marsh Rice Univ. , 408 S.W.2d 269, 273 (Tex. Civ. App.-Houston [1st Dist.] 1966, writ ref'd n.r.e.).[12]
Lee's argument is centered on the fact that Whitten was to receive a remainder interest in the Trust only after the trust terminated. She was, therefore, to receive her interest free of any Trust constraints. Lee further claims that, because the purpose of a spendthrift trust is the protection of the beneficiary from his creditors, that protection was meant only to apply to O'Guinn and not to Whitten. See First Bank & Trust v. Goss , 533 S.W.2d 93, 95 (Tex. Civ. App.-Houston [1st Dist.] 1976, no writ) ("Where it appears from the terms of the instrument creating the trust that it was the donor's or testator's intention to create a trust estate immune from liability for the debts of the beneficiary and to prohibit its alienation by him during the term of the trust, a spendthrift trust is created, and the intentions of the donor or testator will be enforced by the courts of this State."). Lee relies on Goss in support of his position that Lucy did not intend to protect Whitten from creditors because Whitten was to receive the remainder interest free of the trust. Stated differently, Lee claims that Whitten had no interest during the term of the trust.
Nevertheless, Chapter 116 of the Property Code is entitled "Uniform Principal and Income Act" and defines a "Beneficiary" to include, "in the case of a decedent's estate, an heir, legatee, and devisee and, in the case of a trust, an income beneficiary and a remainder beneficiary." TEX. PROP. CODE ANN. § 116.002(2) (West 2014). Chapter 111 of the Property Code is subtitled the Texas Trust Code. TEX. PROP. CODE. ANN. §§ 111.001 -.006 (West 2014). Under this subtitle, " 'Beneficiary' means a person for whose benefit property is held in trust, regardless of the nature of the interest." TEX. PROP. CODE ANN. § 111.004(2). Therefore, Whitten was a beneficiary-and therefore subject to the Trust's spendthrift provisions-even though she was only a remainder beneficiary.
Lee also relies on In re Townley Bypass Unified Credit Trust , 252 S.W.3d 715 (Tex. App.-Texarkana 2008, pet. denied), to support his argument that Whitten was not bound by the spendthrift nature of the Trust. Townley does nothing to advance Lee's position. In that case, Townley's will created a trust leaving a life estate to his wife. The trust was to terminate on the wife's death, and the remaining assets were to be split between the couple's two children. Id. at 717. The will included a spendthrift clause prohibiting any beneficiary from anticipating, assigning, or transferring any income or principal before receiving it. Id. One of the children predeceased the mother and willed his property to his wife. Id. The question before this Court was whether the spendthrift clause in the trust precluded the *818 remainder beneficiary from devising his interest in the assets of the trust estate by will.
In resolving that issue, we initially determined that, because the predeceased son would have had a right to immediate possession upon termination of the intermediate estate, his remainder interest was a vested interest. Id. at 718. Because the interest was vested, it became a part of the son's estate on his mother's death. Normally, such a vested remainder interest could be transferred. In Townley , however, the trust was subject to a spendthrift clause. Id. Due to that provision, we were confronted with the issue of whether the interest passed by the son's will or whether it passed by the laws of intestacy. Id.
We recognized that the trust's residuary beneficiaries-the two children-were, in fact, beneficiaries within the meaning of-and were governed by-the spendthrift clause. Id. at 719 (term "beneficiary" includes both income beneficiary and all remainder beneficiaries). This conclusion was based on the Texas Property Code, which defines a beneficiary as a person for whose benefit property is held in trust, regardless of the nature of the interest. Id. ; see TEX. PROP. CODE ANN. § 116.002(2) (West 2014); see also TEX. PROP. CODE ANN. § 111.004(2).
In determining that the son's interest passed by his will, we relied on the purpose of a spendthrift provision-to protect the beneficiary from his or her own folly. We reasoned that, because this purpose could not be promoted after the beneficiary's death, the spendthrift clause did not prevent the son's interest from passing in accordance with his will. Townley , 252 S.W.3d at 721. We also relied on Texas law which recognizes that a person of sound mind "has a perfect legal right to dispose of his or her property as that person wishes." Id. (citing Rothermel v. Duncan , 369 S.W.2d 917, 923 (Tex. 1963) ).
The Townley decision does not, however, compel the conclusion that Whitten is not bound by the spendthrift clause at issue here. Whitten, a living beneficiary, attempted a present transfer of her trust interest rather than a testamentary disposition, as in Townley . The purpose of the Trust still exists and still governs all living trust beneficiaries. As explained in Townley ,
"[S]pendthrift trusts are upheld on the ground that it is not against public policy to permit the settlor in creating the trust to protect the beneficiary against his own improvidence. When the beneficiary dies, the need for such protection ceases. There would seem no reason, therefore, why on his death his creditors should not be able to reach his interest under the trust if his interest has not ceased on his death." A continuing income or remainder interest in the trust , despite the spendthrift provision, is transferable by will or intestacy for the same reason, and also because the right to pass the continuing interest on to others is a natural feature of such an interest as it was given to the beneficiary by the settlor.
Id. at 720 (quoting RESTATEMENT ( THIRD ) OF TRUSTS § 58 reporter's notes, cmt. g (2003) ). Under Lee's reading of Townley , a remainder beneficiary need not been restrained by a trust's spendthrift clause. Townley does not stand for this proposition, and we decline to read it to permit such a result.
Here, the Trust provides, "No beneficiary may sell, transfer, encumber, or in any way charge the beneficiary's interest in trust income or principal prior to actually receiving it." Whitten is a remainder beneficiary under the Trust. See TEX. PROP. CODE ANN. § 116.002(2). Consequently, Whitten is bound by the spendthrift *819 clause.[13] Whitten's attempted transfer of a portion of her beneficial trust interest to Lee is therefore inadequate to afford Lee standing to contest the Second Codicil. See Faulkner , 137 S.W.3d at 260 ; see also TEX. PROP. CODE ANN. § 112.035(b) (West Supp. 2017) (spendthrift provision prevents voluntary transfer of beneficial trust interest).
V. Conclusion
Because Lee only has a potential right or claim against Lucy's Estate, he is not an "interested party" under the statutory definition of that term. Accordingly, Lee's standing to contest the Second Codicil is dependent on the validity of the Agreement. Because Whitten attempted to assign her beneficial interest in the spendthrift trust to Lee via the Agreement, the Agreement is invalid for violating the spendthrift clause. Consequently, the Agreement cannot serve as a basis for Lee's standing to contest the Second Codicil. The trial court correctly dismissed Lee's petition.
We affirm the trial court's judgment.

Specifically, in the Agreement, Lee promised to:
file a motion to set aside the terms of the March 30, 2015 "First Codicil to Last Will and Testament of Lucy E. Lee," requesting all of the terms in such Will remain, as stated, except as to paragraph (2) on page 2 of said Will, which shall be modified as follows:
(2) Distribution to Mary Elizabeth Whitten and Michael Douglas Lee. Upon the death of Jack Robert O'Guinn, my Executor or Trustee, as the case may be, shall distribute all remaining property of my estate and trust, where ever same may be located, 60% to Mary Elizabeth Whitten and 40% to Michael Douglas Lee;
The agreement further provides that
each party understands and agrees to each term and condition of this agreement, specifically, that upon the death of Jack Robert O'Guinn, Lucy E. Lee's Executor or Trustee, shall distribute and is authorized to distribute all remaining property of Lucy E. Lee's probate and non-probate estate and trust, 60% to Mary Elizabeth Whitten and 40% to Michael Douglas Lee, or, if either Mary Elizabeth Whitten or Michael Douglas Lee is deceased, such amount to such deceased person's surviving issue.

Lee claimed that the Second Codicil was admitted to probate without the mandatory proof required under Section 256.153(c)(1) and (e) of the Texas Estates Code. See Tex. Estates Code Ann. § 256.153(c)(1), (e) (West 2014) (Proof of Execution of Attested Will).

O'Guinn acknowledges that Lee would have standing to contest the First Codicil.

In Evans v. Allen , 358 S.W.3d 358, 364 (Tex. App.-Houston [1st Dist.] 2011, no pet.), the court included some fairly broad language regarding standing, stating, "The inquiry ... is not whether the contestant has an interest in a particular will; rather, the inquiry is whether the contestant has an interest in the decedent's estate. " Id. This language, though, is necessarily limited by the facts before the court. In Evans , there were two wills offered for probate. And, although the contestant did not take under the second will, he would have a pecuniary interest in the estate if the first will was the last valid will. The contestant therefore had standing to challenge the second will. Id.

Both parties engaged in a detailed analysis of standing and whether the El Paso case supports their respective positions relative to O'Guinn's standing to challenge the Agreement. In that case, El Paso Community Partners (EPCP) lost a bid to purchase land from the State to B&G/Sunrise Joint Venture (B&G). EPCP thereafter sued B&G seeking, among other things, that the court declare the purchase contract for the sale between B&G and the State void, claiming that "a material and substantial variance between the State's bid specifications and the contract awarded rendered the contract void or invalid." El Paso , 24 S.W.3d at 622. In affirming the trial court's determination that EPCP lacked standing to challenge the validity of the contract, the court held that a nonparty to an agreement must "allege some interest peculiar to [the nonparty] and not as a member of the general public." Id. at 624. Such an interest exists, according to El Paso , in five situations:
(1) the plaintiff has sustained, or is immediately in danger of sustaining, some direct injury as a result of the complained-of wrongful act; (2) there is a direct relationship between the alleged injury and the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) the plaintiff is an appropriate party to assert the public interest in the matter as well as the plaintiff's own interest.
Id. According to O'Guinn, at least two of these factors apply to him. First, O'Guinn relies on the fact that he has a personal stake in the controversy. "Because Lee's primary purpose for the Agreement was as a means to challenge O'Guinn's interest in the estate, O'Guinn has a personal stake in exposing the Agreement's invalidity." Next, O'Guinn claims a direct injury or an injury in fact as a result of the Agreement. This is so because, if the Agreement is deemed enforceable, Lee will then have the opportunity to litigate a contest of the Second Codicil. If Lee succeeds, he will benefit from the estate's assets, to O'Guinn's direct loss.
In contrast, Lee claims El Paso does not support O'Guinn's standing to challenge the Agreement because (1) O'Guinn did not plead that he had standing to challenge the Agreement; (2) the peculiar interest test does not apply to ordinary contract disputes-instead, it only applies to provide third parties an opportunity to demonstrate how their injury from a contract entered into by a governmental body is different from that sustained by the general public-and (3) Lee has found no case that applies the peculiar interest test to anything other than to enjoin the actions of a governmental body. Lee also claims that O'Guinn cannot prove he is a third party beneficiary of the Agreement, so that exception to the general rule likewise does not afford him standing to challenge the Agreement. Lee claims O'Guinn has no interest in the Agreement whatsoever because he is the sole beneficiary under the Second Codicil, and the Agreement does not change that. Finally, Lee contends that the trial court erred in considering the entirety of the litigation in determining O'Guinn's standing to challenge the Agreement. He claims this reasoning is incorrect because it disregards established contract law and the peculiar interest test.
Nevertheless, the present case does not present the fact situation governed by the rule stated in El Paso . Accordingly, we find that O'Guinn was entitled to question Lee's standing based on the Agreement.

Lee claims that the Agreement is a valid Rule 11 agreement because it is in writing, signed, and filed. He contends that, pursuant to Section 154.071(a) of the Texas Civil Practice and Remedies Code, the Agreement "is enforceable in the same manner as any other written contract." See Tex. Civ. Prac. & Rem. Code Ann. § 154.071(a) (West 2011) (if parties reach settlement and execute written agreement disposing of dispute, agreement is enforceable in same manner as any other written contract). Lee further contends that the Agreement is valid and enforceable because there is sufficient consideration, there are no missing parties, court approval is not required, modification of the First Codicil is not required, and it does not seek to modify a trust. Yet, as Lee notes, O'Guinn was not a party to that agreement. It is doubtful that a Rule 11 agreement between some, but not all, of the parties to a lawsuit could be enforced against the non-signing party. Nevertheless, we need not address this issue, as the question before us is not whether the Agreement is valid and enforceable between Lee and Whitten, but whether the Agreement is adequate to support Lee's standing to challenge the Second Codicil.

The First Codicil (1) amends the introductory paragraph of the Will to update Lucy's residence and identify her assets in Gregg County, (2) revises the residuary gift to the Trust to provide for discretionary payments by the trustee to O'Guinn, (3) revises the residuary gift to the Trust to provide for a distribution of the remaining property of the Trust, upon the death of the last to die of O'Guinn and Lucy, to Whitten or her surviving issue, and (4) adds a new provision for the trustee to act as a trustee for a beneficiary under the age of twenty-five. The Fourth section of the will provides, "My Last Will and Testament dated October 10, 2013 is otherwise confirmed and republished and shall remain."

Long's will directed that "such interest, share, or amount of my estate as may go to ... my son Lester Long, be not given ... in bulk but be held in trust for [his] benefit and paid to [him] in monthly payments." Further, the will stated that "such portion[ ] shall be deposited or turned over to the City National Bank of Sulphur Springs, Texas ... and be held by it as a trust fund" from which Lester Long would be paid the sum of $50.00 per month. Long , 252 S.W.2d at 240. In addressing the issue of whether the will created a spendthrift trust in favor of Lester, we defined a spendthrift trust as "one in which the beneficiary is prohibited from anticipating or assigning his interest in or income from the trust estate." Id. at 246 (quoting Cronquist v. Utah State Agr. College , 114 Utah 426, 201 P.2d 280, 282 (1949) ). In applying this definition, we observed that the provisions of the will requiring that the portion going to Lester should be paid to him in monthly amounts simply had to do with the manner of distribution and were not a spendthrift trust. Id. We further concluded that the sums to be paid to Lester were to be paid out of general funds of the bank and charged to the account. Further, the money paid to Lester was realized from "sales of realty" and "was as fully and completely his as was the title to the realty." Id. at 249. We stated, "The provision that Lester should not be paid his part in bulk has nothing to do with the vested title. As already stated, it related to distribution only. He could not be the owner of the fee to realty and at the same time restricted in his alienation of it." Id. at 250. Further, we recognized that "the rule that it is not necessary that the trust instrument expressly convey or devise legal title to a trustee, if the intention to create an active trust appears from the instrument.... But again, such intention must be 'as clearly manifested as if express terms had been employed.' " Id. (citations omitted). We concluded that the will did not meet these requirements.

On the one hand, Lee argues that the Trust created by the Will and the First Codicil was never funded because the Second Codicil eliminated the Trust. Yet, he also argues in the litigation that the Second Codicil was invalid. Lee cannot have it both ways. If he is successful in this litigation, then the Second Codicil is invalid and the First Codicil and Will become the lawful will of Lucy. In that circumstance, the Trust created by the Will and the First Codicil was funded on the date of Lucy's death by operation of law. See Tex. Estates Code Ann. § 101.001(a)(1). Of course, it is true that, if he is not successful in this litigation, there will be no Trust. But in that instance, Lee would not recover anything under the Agreement or the Will. Therefore, because Lee's standing is contingent upon the Agreement, which contemplates a successful challenge to the Second Codicil, we must measure the Agreement's validity against the Will and First Codicil, not the Second Codicil.

The Agreement is not properly classified as a family settlement agreement because it does not dispose of all of the estate's property. See In re Estate of Halbert , 172 S.W.3d 194, 200 n.11 (Tex. App.-Texarkana 2005, pet. denied).

Specifically, even if the trial court's ruling and our opinion are somehow binding as between Lee and Whitten as well, it would not necessarily render the Agreement invalid since there were other items of consideration in the Agreement beyond the requirement that Lee challenge the Second Codicil. Because that issue is not before us in this proceeding, we take no position on the validity of the Agreement as between Lee and Whitten. Yet, we mention it because it shows that Lee has not established that either the trial court's ruling or our opinion would actually invalidate the Agreement as between Lee and Whitten. In the absence of such proof, Lee has failed to establish that either the trial court's ruling or our opinion would violate this State's public policy encouraging settlement of litigation.

Coffee , however, involved a charitable trust in which "there is greater occasion for the exercise of the power of the court to permit or direct a deviation from the terms of the trust" because of the cy pres doctrine." Coffee , 408 S.W.2d at 285. This doctrine does not apply to private express trusts. Id. The cy pres doctrine provides that,
[u]nless the terms of the trust provide otherwise, where property is placed in trust to be applied to a designated charitable purpose and it is or becomes unlawful, impossible, or impracticable to carry out that purpose, or to the extent it is or becomes wasteful to apply all of the property to the designated purpose, the charitable trust will not fail but the court will direct application of the property or appropriate portion thereof to a charitable purpose that reasonably approximates the designated purpose.
Highland Homes, Ltd. v. State , 448 S.W.3d 403, 407 n.9 (Tex. 2014) (quoting Restatement (Third) of Trusts § 67 (2003) ).

A "beneficiary" is a "person for whose benefit property is held in trust, regardless of the nature of the interest." Tex. Prop. Code Ann. § 111.004(2). An "interest" is "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." Tex. Prop. Code Ann. § 111.004(6). A "remainder beneficiary" is "a person entitled to the principal when an income interest ends." Tex. Prop. Code Ann. § 116.002(11) (West 2014).